

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | 3:16cv34CWR-FKB |
| THIRD COAST TOWING, LLC, GREAT GREAT AMERICAN INSURANCE, and NATURE'S WAY MARINE, LLC. | |
| Defendants. | |

## COMPLAINT

Plaintiff United States of America alleges, on information and belief, as follows:

### NATURE OF ACTION

1.      This is an action to recover oil spill removal costs and civil penalties arising from response activities and cleanup of oil released into the Mississippi River from a tank barge owned by Third Coast Towing, LLC and being propelled by a tugboat owned by Nature's Way Marine, LLC after the barge allided with the Vicksburg Railroad Bridge ("Bridge") in Vicksburg, Mississippi.  As a result of this incident, the United States has sustained recoverable oil spill removal costs and defendants are liable for civil penalties.

2.      This case of admiralty and maritime jurisdiction is brought under the Oil Pollution Act of 1990 ("OPA") 33 U.S.C. §§ 2701, *et seq.*, and the Federal Water Pollution Control Act, generally referred to as the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251, *et seq.*

## JURISDICTION AND VENUE

3.      The United States is authorized to bring suit, and the Court has jurisdiction, pursuant to 28 U.S.C. §§ 1333, 1345, 1355; 33 U.S.C. § 2717(b); and, 33 U.S.C. § 1321(b)(7)(E).

4.      Venue is proper in the Southern District of Mississippi pursuant to 28 U.S.C. §§ 104(b), 1391(b), and 1395(a); 33 U.S.C. § 2717(b); and, 33 U.S.C. § 1321(b)(7)(E).

## DEFENDANTS, VESSELS, AND GUARANTORS

5.      At all times material to this action, the Tank Barge MOC 12 ("MOC 12") and Tank Barge MOC 15 ("MOC 15") were owned by Third Coast Towing, LLC ("Third Coast"). Defendant Third Coast is believed to be a limited liability corporation organized under the laws of Texas, with a principal place of business located at 600 Leopold St, Suite 2100-W, Corpus Christi, Texas 78401-0468.

6.      MOC 12, Official Number 630586, is a tank barge measuring 252 feet in length and weighing 1,631 gross tons. The vessel has four (4) cargo tanks with a total capacity of 20,275 barrels.

7.      MOC 15, Official Number 624210, is a tank barge measuring 297.5 feet in length and weighing 1,987 gross tons. The vessel has four (4) cargo tanks for a total capacity of 29,620 barrels.

8.      Both MOC 12 and MOC 15 are "dumb" barges having no motive power on their own.

9.     OPA requires a Certificate of Financial Responsibility ("COFR") for tank vessels up to a maximum amount of liability as defined by 33 U.S.C. § 2704.  33 U.S.C. § 2716(a) and (f).  This amount is based on the gross tonnage of the vessel.  33 U.S.C. § 2704(a).

10.     At all times relevant to this Complaint, Defendant Great American Insurance Group ("Great American") provided financial assurances for both MOC 12 and MOC 15, to meet the COFR requirements.  The Coast Guard's National Pollution Funds Center ("NPFC") issued COFRs to Third Coast Towing for these vessels.  Based on its gross tonnage, the amount of financial assurance provided by Great American for the MOC 12 is $4,272,000.

11.     Upon information and belief, Defendant Nature's Way Marine, LLC ("Nature's Way") is a limited liability corporation with its principal place of business located at 4993 Rangeline Road, Theodore, Alabama 36582

12.     Tug Motor Vessel ("M/V") NATURE'S WAY ENDEAVOR ("ENDEAVOR") is a United States - flagged towing vessel, official number 553290 and at all times material to this action, was owned and operated by Nature's Way.

13.     On behalf of Lloyds Syndicate 4444, the Environmental Pollution Group, LLC ("EPG") provided the COFR for the ENDEAVOR and is the Guarantor of this vessel pursuant to 33 U.S.C. § 2716(a) and (f) in an amount up to $854,400.  Upon information and belief, EPG has paid removal costs that equal or exceed its guaranty.

## GENERAL ALLEGATIONS

14.     On October 17, 2012, Third Coast entered into a Towage Agreement with Nature's Way whereby the ENDEAVOR would tow MOC 12 and another unspecified tank barge laden with crude oil from Caloosa, Oklahoma to a discharge port in Louisiana for $5,000 per day, plus specific delineated expenses.

15.     On the evening of January 26, 2013, the ENDEAVOR was proceeding southbound on the lower Mississippi River pushing MOC 12 and MOC 15 laden with light crude oil.

16.     At approximately 23:30, local time, Yancy Guidry came on watch as pilot and assumed command and control of the ENDEAVOR.

17.     Shortly after Guidry assumed watch, the ENDEAVOR and its tow would pass under the Bridge, located at Lower Mississippi River mile 434.5, in or near Vicksburg, Mississippi.

18.     The Bridge is operated and maintained by the Vicksburg Bridge Commission of Warren County Mississippi.

19.     The preferred span under which to pass is between Bridge piers 3 and 4.

20.     Mr. Guidry had not navigated this stretch of the Mississippi River for several years.

21.     As Mr. Guidry approached the Bridge, he realized he was not lined up to pass under the preferred span and unsuccessfully attempted to navigate under the alternate span, between piers 4 and 5.

4

22.     Mr. Guidry did not maintain a proper look-out by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation and of the risk of collision.

23.     At approximately, 01:20, local time, on January 27, 2013, the lead barge, MOC 15, allided with pier 4 of the Bridge and proceeded to break away and drift down river.

24.     The ENDEAVOR and the MOC 12 remained connected.  MOC 12 also allided headlong into pier 4 of the Bridge, resulting in a gash in its stern and the discharge of oil from the number four starboard cargo tank into the Mississippi River.

25.     The ENDEAVOR and MOC 12 passed under the bridge, at which point crew members of the ENDEAVOR caught MOC 15.  The ENDEAVOR pushed both barges to the right bank on the Louisiana side of the Mississippi River.

26.     As a result of the gash to its stern, MOC 12 spilled over 7,100 gallons of light crude oil in the Mississippi River.

27.     Quantities of product that spilled were sufficient to cause discoloration of the surface of the water or adjoining shorelines, or cause a sludge or emulsion to be deposited on both the Louisiana and Mississippi shorelines.

28.     OPA assigns strict liability to the owners and operators of vessels that discharge oil into the navigable waters of the United States.  Specifically, section 2702(a) provides that "each responsible party for a vessel or facility from which oil is discharged . . . is liable for the removal costs and damages . . . that result from the incident."  33

5

U.S.C. § 2702(a).  "[A]ny person owning, operating, or demise chartering the vessel" is deemed a "responsible party."  33 U.S.C. § 2701(26)(A).  See also 33 U.S.C. § 1321(f).

29.     "Removal costs means the costs of removal that are incurred after a discharge of oil has occurred or, in any case in which there is a substantial threat of a discharge of oil, the costs to prevent, minimize or mitigate oil pollution from such an incident."  33 U.S.C. § 2701(31).

30.     OPA and the CWA impose on the Responsible Party ("RP") the primary duty of oil cleanup.  33 U.S.C. § 2702(a) and (b); 33 U.S.C. § 1321(b) and (c).

31.     Owners and operators for tank vessels must develop a Vessel Response Plan and secure, in advance, the personnel and equipment to clean up a worst-case scenario spill.  Specifically, the Vessel Response Plan must identify a Qualified Individual to implement removal actions and a contractor, referred to as an Oil Spill Response Organization ("OSRO") with the capacity to address a worst case spill.  33 U.S.C. § 1321(j)(5); 33 C.F.R. § 155.1510 *et seq.*

32.     The U.S. Coast Guard, through the Federal-On-Scene Coordinator ("FOSC") directs the RP's cleanup efforts.  33 U.S.C. § 1321(c)(1)(B); 40 C.F.R. §§ 300.120(a), 300.135(a), 300.305(c), and (d).  The FOSC is authorized to issue administrative orders to RPs to remove a discharge.  33 U.S.C. § 1321(c)(1)(B).

33.     Nature's Way, as operator of MOC 12 and MOC 15, and Third Coast Towing, as owner of MOC 12 and MOC 15, are RPs within the meaning of OPA and liable for removal costs and damages resulting from the spill of crude oil, or the substantial threat of a discharge of oil, as a result of the allision.

34.     Shortly after the allision, a bridge operator with Vicksburg Bridge Commission notified the Coast Guard Marine Safety Detachment located at Vicksburg Mississippi of the incident.

35.     On January 27, 2013, The FOSC established a "Unified Command" comprised of federal representatives from the Coast Guard, the states of Mississippi and Louisiana, Responsible Parties, and their contractors.  The Unified Command leadership included the FOSC, State-On-Scene Coordinators from Mississippi and Louisiana, and the Incident Commander on behalf of Nature's Way.

36.     The Coast Guard established a safety zone shutting down traffic on the Mississippi River from Mile Marker 441 to 445 from January 27, 2013 through February 2, 2013.

37.     On January 28, 2013, the FOSC issued an administrative order to Nature's Way to develop a lightering plan, salvage plan, and remediation plan and procure the necessary vessels, personnel, and other assets to implement plans and to undertake actions directed by the FOSC.

38.     On January 28, 2013, the Coast Guard provided Nature's Way with a formal notice of its potential liability under OPA and of its responsibility to carry out the removal of the discharge as directed by the Coast Guard.

39.     On January 31, 2013, the NPFC issued notices of potential liability as a Responsible Party under OPA to Nature's Way and to EPG as the Guarantor of the ENDEAVOR.  On that same day, the NPFC also issued notices of potential liability as a Responsible Party under OPA to Third Coast and to Great American as Guarantor of

MOC 12 and MOC 15.  These notices informed the RPs and Guarantors of their potential liability for oil spill removal costs and damages.

40.     Nature's Way retained United States Environmental Services ("USES") as one of the Oil Spill Response Organizations to undertake oil spill removal actions at the direction of the FOSC and the Unified Command.

41.     On information and belief,[1] EPG as Guarantor for the ENDEAVOR, paid USES' oil spill removal charges with the exception of $231,001.49.

42.     OPA permits a claimant who has not been reimbursed oil spill removal costs and/or damages to seek recovery of those costs from the Oil Spill Liability Trust Fund ("Fund").  33 U.S.C. § 2712(a)(1) and (4).  The Fund is managed by the Coast Guard's National Pollution Funds Center ("NPFC").

43.     The claimant must first present the claim to the Responsible Parties or their Guarantors.  33 U.S.C. § 2713(a).  If the claim is not settled within ninety (90) days, it is deemed denied and the claimant may submit its claim to the NPFC.  33 U.S.C. § 2713(c).

44.     Upon receipt of a properly submitted claim for oil spill removal costs, the NPFC then determines whether the costs contained in the claim are compensable under OPA and its regulations.  33 U.S.C. § 2712(a); 33 C.F.R. §§ 136.203, 136.205.

45.     USES then submitted a claim for $231,001.49 to Nature's Way (and/or EPG) and Third Coast Towing (and/or Great American).  Neither the RPs nor Guarantors paid this claim within ninety (90) days or at anytime thereafter.

---

[1] In a letter dated July 31, 2015, counsel for Nature's Way claimed that EPG paid $2,992,782.15 in oil spill removal costs.

46.    USES submitted its claim for $231,001.49 to the NPFC.  The NPFC adjudicated the claim and, on March 24, 2014, determined that $200,254.92 was compensable under OPA.  The Fund reimbursed USES $200,254.92.

47.    Upon payment of $200,254.92 to USES from the Fund, the United States became subrogated to all rights of the claimant to recover from the RPs.  33 U.S.C. §§ 2712(f) and 2715.

48.    Under OPA, States that incur removal costs or damages are permitted to bypass presentment to the RP and can seek recovery directly from the Fund.  33 U.S.C. § 2713(b)(1)(c).

49.    The state of Mississippi provided staff for the Shoreline Cleanup and Assessment Technique team and to participate in the Unified Command.   Mississippi incurred $15,214.61 in oil spill removal costs which were also reimbursed from the Fund.

50.    Upon payment of $15,214.61 to Mississippi, the United States became subrogated to all rights of Mississippi to recover from the Responsible Parties.  33 U.S.C. §§ 2712(f) and 2715.

51.    At the request of the FOSC, the U.S. EPA undertook air quality monitoring and other oil spill response activities.  The EPA was reimbursed $31,067.31 for these activities by the Fund.

52.    The Coast Guard provided the FOSC with technical support from the Coast Guard's National Strike Force, comprised of the Atlantic, Gulf and Pacific Strike Teams. These teams are staffed with skilled Coast Guard personnel who specialize in oil spills, chemical spills, and emergency response. *See* 33 U.S.C. § 1321(d)(2)(C); 33 C.F.R. §

300.145. The Coast Guard provided equipment. It also provided support to and staffed the Incident Command Post. The Coast Guard incurred $498,654.15 of oil spill removal costs in this manner.

53.     On May 12, 2014, the Coast Guard's National Pollution Funds Center issued a Notice of Potential Liability to Nature's Way Marine identifying it as a Responsible Party under OPA for oil spill removal costs incurred by the Coast Guard, EPA, and the State of Mississippi in the amount of $792,868.98.

54.     On September 30, 2014, the NPFC issued a Notice of Potential Liability to Third Coast Towing identifying it a as a Responsible Party under OPA for oil spill removal costs incurred by the Coast Guard, EPA, and the State of Mississippi in the amount of $792,868.98.

55.     On April 23, 2015, the NPFC issued a second such notice to Third Coast and Nature's Way as well as separate letters to Great American and to Lloyds of London Syndicate 4444, notifying all parties of their liability for $792,868.98 of oil spill removal costs. At the time of filing this Complaint, neither Guarantors nor the Responsible Parties have paid any of these costs.

56.     The United States expended "removal costs" and sustained "damages" within the meaning of OPA. 33 U.S.C. § 2702(b). To recover such costs and damages, the United States hereby asserts a claim on behalf of the Fund, from which the United States paid those costs.

57.     The CWA imposes civil penalties on those who unlawfully discharge oil into and upon the navigable waters of the United States and adjoining shorelines. Penalty

amounts are based in part on the number of barrels of oil discharged.  See 33 U.S.C. §

1321(b)(7) and 33 C.F.R. § 27.3 (Penalty Adjustment Table).

58.    Penalty amounts are also based on factors established by the CWA

including, among other factors, the seriousness of the violation and the degree of

culpability involved, and the degree of success of efforts by the violator to minimize or

mitigate the effects of the discharge. 33 U.S.C. § 1321(b)(8).

59.    Within the meaning of the CWA, oil discharges in "such quantities as may

be harmful" include oil spills that cause "a film or sheen upon or discoloration of the

surface of the water or adjoining shorelines or cause a sludge or emulsion to be deposited

beneath the surface of the water or upon adjoining shorelines."  40 C.F.R. § 110.3(b).

The spill from the allision with the Bridge was a discharge of oil "in such quantities as

may be harmful."  33 U.S.C. § 1321(b)(3).

60.    The United States seeks a penalty under the CWA for discharging oil or

hazardous substance into the navigable waters of the United States and adjoining

shoreline in an amount to be determined by the Court.

**FIRST CLAIM FOR RELIEF**

61.    Plaintiff, the United States of America, refers to and incorporates by

reference as though full set forth herein, each and every foregoing paragraph of this

Complaint.

62.    Pursuant to 33 U.S.C. §§ 2702, 2712(f), and 2715, Defendants Third Coast,

its Guarantor, Great American, and Nature's Way are jointly and severally liable to the

United States in the amount of $792,868.98, plus interest, for OPA removal costs. 33 U.S.C. §§ 2702(a) and (b), 2712(a)(1) and (4).

63.     The Guarantors, Great American and EPG, are only liable up to the maximum amount as established by 33 U.S.C. § 2704 and identified in their respective COFRs. 33 U.S.C. § 2716(a), (f), and (g). Upon information and belief, EPG has paid removal costs that equal or exceed its guaranty amount however, Great American has not.

## SECOND CLAIM FOR RELIEF

### Civil Penalties for Violations of CWA Section 311(b)(3) – Oil Spill

64.     The preceding paragraphs are incorporated herein.

65.     Section 311(b)(3) of the CWA prohibits the discharge of oil or hazardous substances in "such quantities as may be harmful" into or upon the navigable waters of the United States or adjoining shorelines. 33 U.S.C. § 1321(b)(3).

66.     Pursuant to Section 311(b)(7)(A) of the CWA, "[a]ny person who is the owner, operator, or person in charge of any vessel . . . from which oil . . . is discharged in violation of paragraph (3) shall be subject to a civil penalty . . . ." 33 U.S.C. § 1321(b)(7)(A).

67.     Civil penalties will be increased pursuant to Section 311(b)(7)(D) of the CWA if the violation results from "gross negligence or willful misconduct." 33 U.S.C. § 1321(b)(7)(D).

68.     Defendants Third Coast and Nature's Way are each a "person" within the meaning of Section 311(a)(7) of the CWA. 33 U.S.C. § 1321(a)(7).

69.     Defendant Nature's Way is an operator and person in charge of the vessel from which oil was discharged within the meaning of Section 311(a)(6) of the CWA.  33 U.S.C. § 1321(a)(6).

70.     Defendant Third Coast is the owner of the vessel from which oil was discharged within the meaning of Section 311(a)(6) of the CWA.  33 U.S.C. § 1321(a)(6).

71.     MOC 12 is a "vessel" within the meaning of Section 311(a)(3) of the CWA. 33 U.S.C. § 1321(a)(3).

72.     The spilling of oil from MOC 12 constitutes a "discharge" of oil within the meaning of Section 311(a)(2) of the CWA.  33 U.S.C. § 1321(a)(2).  For the purposes of Section 311(a)(2) of the CWA, "discharge" is defined to include "any spilling, leaking, pumping, pouring, emitting, emptying or dumping . . . ," subject to certain specified exceptions not applicable here. 33 U.S.C. § 1321(a)(2).

73.     The discharge of oil was into or upon the navigable waters of the United States within the meaning of Section 311(b)(3) of the CWA.  The Mississippi River is a navigable water.

74.     The oil discharge was in a quantity "as may be harmful" within the meaning of Section 311(b)(3) and (4) of the CWA, 33 U.S.C. § 1321(b)(3)-(4), and 40 C.F.R. §110.3.  Congress directed the President to determine by regulation "those quantities of oil and any hazardous substance the discharge of which may be harmful to public health or welfare or the environment of the United States." 33 U.S.C. § 1321(b)(4).  The President delegated authority to the Administrator of the Environmental

Protection Agency under CWA Section 311(b)(3) and (b)(4) for determining quantities of

oil the discharge of which may be harmful.  Exec. Order No. 12777, Section 8(a), 56 Fed.

Reg. 54757, 54768 (1991).  EPA determined that discharges of oil that "violated

applicable water quality standards, or cause a film or sheen upon or discoloration of the

surface of the water or upon adjoining shorelines" are, for the purposes of Section

311(b)(4) of the CWA, discharges of oil in such quantities that may be harmful to the

public health or welfare or the environment of the United States.  40 C.F.R. § 110.3.

75.     Defendants Nature's Way and Third Coast's oil discharge is a violation of

Section 311 (b)(3) of CWA. 33 U.S.C. § 1321(b)(3).

76.     Defendants Nature's Way and Third Coast are each liable for civil penalties

of up to $2,100 per barrel of oil discharged under CWA Section 311 (b)(7)(A) or $5,300

per barrel if gross negligence or willful misconduct is found. See 40 C.F.R. § 19.4 (listing

updated penalty rates for violations that occur after December 6, 2013, as required by the

Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note; Pub. L.

101-410), as amended by the Debt Collection Improvement Act of 1996).


**PRAYER FOR RELIEF**

WHEREFORE, the United States of America prays that the Court:

77.     Award the United States the sum of $792,868.98, plus interest, jointly and

severally from all Defendants for OPA removal costs satisfied by the Fund.

78.     Assess civil penalties against Defendant Nature's Way for the oil spill

violation of Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3), in the amount of up

to $2,100 per barrel discharged under CWA Section 311(b)(7)(A) or $5,300 per barrel if willful misconduct or gross negligence is shown;

  79. Assess civil penalties against Defendant Third Coast for the oil spill violation of Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3), in the amount of up to $2,100 per barrel discharged under CWA Section 311(b)(7)(A) or $5,300 per barrel if willful misconduct or gross negligence is shown;

  80. Award such other and further relief as the Court may deem just and proper.

       Respectfully submitted,

       BENJAMIN C. MIZER
       Principal Deputy Assistant Attorney General

       STEVEN G. FLYNN
       Assistant Director Admiralty
       U.S. Department of Justice
       Aviation & Admiralty Litigation
       Torts Branch, Civil Division

       *Sharon Shutler*

       SHARON K. SHUTLER
       Trial Attorney
       Aviation & Admiralty Litigation
       Torts Branch, Civil Division
       P.O. Box 14271
       Washington, DC  20044-2471
       Tel: (202) 616-4046
       Fax: (202) 616-4002
       Email:  Sharon.Shutler@usdoj.gov

       ELLEN M. MAHAN
       Deputy Section Chief
       Environmental Enforcement Section
       Environment and Natural Resources Division
       United States Department of Justice

*Elise Feldman*

ELISE S. FELDMAN
Senior Counsel
United States Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
301 Howard Street, Suite 1050
San Francisco, CA 94105
Tel: (415) 744-6470
Fax: (415) 744-6476
Email: Elise.Feldman@usdoj.gov

*Attorneys for Plaintiff*
UNITED STATES OF AMERICA

Of Counsel:

LCDR Nicholas J. Tabori
National Pollution Funds Center
U.S. Coast Guard Stop 7605
2703 Martin Luther King Jr. Ave.
Washington, DC 20593-6064

LT Gretal G. Kinney, UCSG
Senior Staff Attorney
Eight Coast Guard District
Hale Boggs Federal Building
500 Poydras Street
New Orleans, LA 70130
Tel: (504) 671-2033
Fax: (504) 671-2040
Email: Gretal.G.Kinney@uscg.mil

LCDR Christopher L. Jones
Office of Claims and Litigation
Coast Guard Headquarters
2703 Martin Luther King Jr. Ave. SE
Washington, DC 20593-7213
Tel: (202) 372-3736
Email: Christopher.L.Jones@uscg.mil