# ATTACHMENT 2 – NPFC DETERMINATION DENYING NATURE'S WAY'S AND ENVIRONMENTAL POLLUTION GROUP'S REQUEST TO LIMIT LIABILITY UNDER OPA

**U.S. Department of Homeland Security**

**United States Coast Guard**

Director
National Pollution Funds Center

2701 Martin Luther King Jr. Ave
Stop 7605
Washington, DC 20593-7605
Staff Symbol: Ca
Toll-Free: 1-800-280-7118
Fax: 202-795-6113
Email: ARL-PF-NPFCCLAIMSINFO@uscg.mil

5890
March 16, 2016

Sent VIA E-mail: mhebert@joneswalker.com

Jones Walker
Attn: Marc Hebert
201 St. Charles Avenue
New Orleans, LA 70170-5100

RE: N13011-0002
Nature's Way Marine & EPG

Dear Mr. Hebert:

The National Pollution Funds Center (NPFC), in accordance with the Oil Pollution Act, 33 U.S.C. § 2708(a)(2) denies payment on claim number N13011-0002 involving the NATURE'S WAY ENDEAVOR on two separate grounds. First, Claimants have not exceeded the statutory limitation of liability as provided in 33 U.S.C. § 2704 of the Act. Second, Claimants have released their right to recover response costs from Third Coast Towing, the owner of the MOC-12 tank vessel, rights which are required to be subrogable to and acquired by the U.S. Government under 33 U.S.C. § 2712(f).

This determination is based on an analysis of the information submitted. Please see the attached determination for further details regarding the rationale for this decision.

You may make a written request for reconsideration of this claim determination. Any request for reconsideration must include the factual and legal grounds for the relief requested, providing any additional support for the claim. The reconsideration must be received by the Director, NPFC within 60 days after the date the denial was mailed to you or within 30 days after receipt of the denial by you, whichever date is earlier.

Because of the timeliness requirement for reconsideration requests, you may email an advance copy of your request for reconsideration directly to the claims manager handling your claim or to ARL-PF-NPFCClaimsInfo@uscg.mil email address. You may also alert us that a reconsideration request has been mailed by calling 1-800-280-7118.

In order to satisfy OPA claims regulations, you must mail any reconsideration request to:

   CG National Pollution Funds Center: (CA)
   US COAST GUARD STOP 7605
   2703 Martin Luther King Jr., Ave. SE
   WASHINGTON DC 20593-7605

If you find that you will be unable to gather particular information with the time periods, you may include a request for extension of time for a specified duration with your reconsideration request. Reconsideration of the denial will be based upon the information provided. A claim may be reconsidered only once. Disposition of that reconsideration in writing will constitute final agency action. All correspondence should include claim number N13011-0002.

Sincerely,

*[signature]*

ROBERT RIOUX
Claims Manager
U.S. Coast Guard
By Direction

Enclosure: Claim Summary / Determination

CLAIM SUMMARY / DETERMINATION

| | |
|---|---|
| **Claim Number:** | N13011-0002 |
| **Claimants:** | Natures Way Marine, LLC (Responsible Party), and Environmental Pollution Group, LLC (Responsible Party's Insurer) |
| **Type of Claimant:** | Corporate (US) |
| **Type of Claim:** | Limit of Liability |
| **Claim Manager:** | Robert Rioux |
| **Amount Requested:** | $2,138,382.15 |

## Executive Summary

After a thorough review of the documentation and arguments provided by Nature's Way Marine, LLC and Environmental Pollution Group, LLC (collectively referred to as "Claimants"), the NPFC determines that this claim must be denied. This claim arises from an incident where a tug, the M/V NATURE'S WAY ENDEAVOR ("Tug" or "ENDEAVOR"), pushed a tank barge, the MOC-12, into the Vicksburg Railroad Bridge and caused an oil spill. Claimants seek reimbursement of their costs that exceed the limit of liability. However, Claimants incorrectly claim a limit of liability based upon the ENDEAVOR instead of the MOC-12. Claimants are incorrect because the MOC-12 was the vessel that discharged oil. As Claimants' alleged expenditures do not exceed the MOC-12's limit of liability, this claim must be denied. Additionally, even if the ENDEAVOR's liability limit applied, this claim must still be denied because Claimants released all their rights against a responsible party ("RP"). Under 33 U.S.C. § 2712(f), the Oil Spill Liability Trust Fund ("OSLTF") may not reimburse a claim when the claimant is unable to subrogate all of its rights against a RP to the United States. These issues will be discussed in more detail below.

## I. BACKGROUND:

### A. Oil Spill Incident

On January 27, 2013, the ENDEAVOR was pushing tank barges MOC-12 and MOC-15 while transiting southbound on the Lower Mississippi River towards the Vicksburg Railroad Bridge located at mile marker 434.5. At 0120, the ENDEAVOR's tow struck the number four bridge pier of the Vicksburg Railroad Bridge. The tow's lead barge, the MOC-15, broke away after alliding with the bridge pier and sustaining damage along the port side. The second barge, the MOC-12, remained attached to the ENDEAVOR and hit the bridge pier head on. MOC-12 sustained significant damage and subsequently discharged an estimated 7,181 gallons of sweet crude oil into the Mississippi River, a navigable waterway of the U.S.

### B. Responsible Parties

As required by the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. § 2714(a), the Coast Guard designated the sources of the discharge and notified the RPs and their guarantors of that designation. On January 31, 2013, the Coast Guard's National Pollution Funds Center ("NPFC") issued Responsible Party designation letters to: (1) Third Coast Towing, LLC ("Third Coast"), owner of the barges; (2) Great American Insurance Company ("Great American"), guarantor of

3

the barges; (3) Nature's Way Marine, LLC ("Nature's Way"), operator of the barges; and, (4) the Environment Protection Group, LLC ("EPG"), the guarantor and the insurer of the tug[1].

On May 12, 2014, the NPFC issued a Notice of Potential Liability to Nature's Way identifying it as an RP under OPA for oil spill removal costs incurred by the Coast Guard, EPA, and Mississippi in the amount of $792,868.98.[2] On September 30, 2014, the NPFC also issued a Notice of Potential Liability to Third Coast.[3] On April 23, 2015, the NPFC issued a second such notice to Third Coast and Nature's Way, as well as separate letters to Great American and to EPG, notifying all parties of their potential liability.[4] No payment has been received from any of the parties.

### C. The Vessel

At the time of the incident, tank barge MOC-12, was an inspected double-hulled vessel, measuring 252 feet in length, and weighing 1,631 gross tons. Third Coast owned the MOC-12.[5] The vessel had eight cargo tanks with a total capacity of approximately 600,000 gallons. MOC-12 is a "dumb barge,"[6] meaning it has no means of mechanical propulsion. Instead, the MOC-12 is designed to be towed by another vessel.

### D. Contract of Towage

In October, 2012, Third Coast entered into a contract with Nature's Way whereby its tug, the ENDEAVOR would tow the MOC-12 and another tank barge from Caloosa, Oklahoma to Louisiana.[7]

### E. Related Litigation Between Third Coast and Nature's Way

In 2013, Third Coast sued Nature's Way for causes of action arising from this incident. The parties entered into a Settlement Agreement in which both parties released each other of "all claims for losses and damages of whatever nature and kind" that the parties had against each other from the "damage allegedly sustained and the spill, cleanup, salvage and related efforts . . . ." The case was dismissed with prejudice.[8]

---

[1] *See*, NPFC RP Notice of Designation Letters dated January 31, 2013.

[2] *See*, NPFC Letters dated May 12, 2014.

[3] *See*, NPFC Letters dated September 30, 2014.

[4] *See*, NPFC's Bills dated April 23, 2015.

[5] *See*, Certificate of Financial Responsibility for MOC-12

[6] Just like the MOC-12, the MOC-15 was a dumb barge.

[7] *See*, Letter from Jones Walker, attorney representing Nature's Way and EPG dated July 31, 2015, Exhibit C, Contract of Towage.

[8] *See*, Letter from Jones Walker, attorney representing Nature's Way and EPG dated July 31, 2015, Exhibit F, Receipt, Release, Indemnification and Assignment Agreement.

4

## II. THE CLAIM:

### A. The Claim

Claimants submitted this claim on May 27, 2015. Claimants contend that under 33 U.S.C. § 2708 they are entitled to reimbursement of removal costs that exceed their liability limits established in 33 U.S.C. § 2704. Claimants assert that they expended $2,992,782.15 in removal costs and they argue that the applicable limit of liability should be determined based upon the Tug. At the time of the incident, the Tug's limit of liability would have been $854,400.[9] Claimants, therefore, seek to recover the difference between the Tug's limit of liability and the removal costs, or $2,138,382.15 (2,992,782.15 - $854,400 = $2,138,382.15) from the Oil Spill Liability Trust Fund (OSLTF). Additionally, Claimants also request that they be excused from reimbursing Coast Guard expenditures for this incident including removal costs and claims paid.[10] Currently, these costs total $792,868.98.

### B. Claimants' Arguments

On July 31, 2015, Claimants submitted correspondence arguing that Nature's Way should not be considered an operator of the MOC-12 under OPA.[11] Rather, Claimants contended that Nature's Way was a third-party contractor hired to move the MOC-12, "from port to port."[12] Instead of being liable as an operator, Claimants reasoned that Nature's Way was a RP under 33 U.S.C. § 2702 (d) because it was a third-party solely responsible for the spill. If Nature's Way was a sole fault third-party under 33 U.S.C. § 2702 (d), then the applicable limit of liability would be based upon the ENDEAVOR, not the MOC-12.

## III. NPFC's ANALYSIS

### A. OPA's Liability Limits Are Based Upon the Discharging Vessel

A RP's liability under the OPA is strict, joint, and several. Specifically, 33 U.S.C. § 2702(a) imposes strict liability on a RP for removal costs and damages resulting from an OPA incident. For a vessel, a RP includes "any person owning, operating, or demise chartering the vessel."[13] However, if the oil spill was solely caused by the actions of a third-party, the OPA may provide the vessel's owner, operator, and demise charter with a complete defense to liability and imposes RP liability upon the sole fault third-party.[14] When the defense applies, the sole fault third-party will "be treated as the responsible party or parties for purposes of determining liability".[15]

---

[9] *See*, Letter from Jones Walker, attorney representing Nature's Way and EPG dated May 27, 2015

[10] *See*, USES claim N13011-0001for $200,254.92

[11] *See*, Letter from Jones Walker, attorney representing Nature's Way and EPG dated July 31, 2015, page 2

[12] *See*, Letter from Jones Walker, attorney representing Nature's Way and EPG dated July 31, 2015, page 3.

[13] 33 U.S.C. § 2701 (32)(A).

[14] 33 U.S.C. § 2703 (a)(3) and 2702 (d)(1)(A).

[15] 33 U.S.C. § 2702 (d)(1)(A).

5

Importantly here, the defense under 33 U.S.C. § 2703 (a)(3) does not apply when the sole fault third-party acted in "connection with any contractual relationship with the responsible party."

Under limited circumstances, a RP may seek reimbursement of removal costs and damages from the OSLTF through an administrative claim. Under 33 U.S.C. § 2708, a RP can submit an administrative claim for OSLTF reimbursement upon showing an entitlement to either a complete defense under 33 U.S.C. § 2703 or limited liability under 33 U.S.C. § 2704. If a RP can demonstrate an entitlement to a complete defense under 33 U.S.C. § 2703, then the OSLTF may reimburse all OPA removal costs and damages incurred by the RP. Alternatively, if a RP can demonstrate an entitlement to limited liability under 33 U.S.C. § 2704, then the OSLTF may reimburse any removal costs and damages that exceed the applicable limit of liability. For vessels, OPA's liability limits are based upon the size and type of vessel that discharged the oil.

Although limits of liability are typically based upon the size and type of the discharging vessel, the OPA provides a limited exception to this rule for sole fault third-parties. When a sole fault third-party is treated as a RP under 33 U.S.C. § 2702 (d), the limits of liability may be determined based upon the size and type of sole fault third-party's vessel instead of the vessel that discharged oil. Specifically, 33 U.S.C. § 2702 (d)(2)(A) provides:

> If the act or omission of a third party that causes the incident occurs in connection with a vessel or facility owned or operated by the third party, the liability of the third party shall be subject to the limits provided in section 2704 of this title as applied with respect to the vessel or facility.

In this case, Claimants seek OSLTF reimbursement under 33 U.S.C. § 2708 (a)(2) of removal costs that exceed their OPA limits of liability. By making the claim, Claimants recognize that Nature's Way is a RP who is liable for this incident. However, Claimants theorize that Nature's Way is a sole fault third-party and the applicable limits of liability should be determined by its vessel, the ENDEAVOR, instead of the discharging vessel, the MOC-12. If Claimants are correct, then the applicable limit of liability would be $854,400. However, if OPA's limit of liability is controlled by the MOC-12, then the applicable limit of liability would be $4,272,000.

After carefully considering all the evidence in the administrative record, the NPFC determines that the limit of liability should be based upon the size and type of the discharging vessel, the MOC-12. According, the applicable limit of liability in this case is $4,272,000. Claimants rely on 33 U.S.C. § 2702 (d) to argue that Nature's Way was a sole fault third-party, but fail to acknowledge that such a designation is only permitted when a third-party defense under 33 U.S.C. § 2703 (a)(3) applies to an incident. Specifically, the statute cited by Claimants, 33 U.S.C. § 2702 (d)(1)(A) (emphasis added), expressly incorporates OPA's third-party defense with the following:

> Except as provided in subparagraph (B), in any case in which a responsible party establishes that a discharge or threat of discharge and the resulting removal costs and damages were caused solely by an act or omission of **one or more third parties described in section 2703 (a)(3)** of this title (or solely by such an act or omission in combination with an act of God or an act of war), the third party or parties shall be treated as the responsible party or parties for purposes of determining liability under this subchapter.

6

Under 2703(a)(3), an RP must show that the spill is caused solely by "an act or omission of a third party, *other than an employee or agent of the responsible party or a third party whose act or omission occurs in connection with any contractual relationship with the responsible party . . .*" 33 U.S.C. § 2703(a)(3) (emphasis added). Thus, Nature's Way cannot be a sole fault third-party under 33 U.S.C. § 2703 (a)(3) because its involvement in this incident occurred in connection with a contractual relationship with the owner of the MOC-12. The third-party defense does not apply here because, by Claimants express admission, Nature's Way had a towage contract with Third Coast, the owner of the MOC-12.[16] See *Buffalo Marine Services, Inc. v United States*, 663 F. 750 (5th Cir. 2011) (Any contractual relationship, even an indirect vitiates the third-party defense under Section 2703.)[17] The contract required Nature's Way to tow the MOC-12 from port to port and this oil spill occurred during the performance of that contract.[18] Because Nature's Way cannot be a sole fault third-party, the applicable limit of liability in this case must be determined by the discharging vessel, which was the MOC-12, not the ENDEAVOR. Consequently, this claim must be denied because Claimants' removal costs and damages do not exceed the applicable limit of liability, which is $4,272,000.[19]

### B. Nature's Way Is An Operator Under OPA

With respect to vessels, OPA defines a RP to include "any person owning, operating, or demise chartering the vessel."[20] The OPA further defines "owner or operator" to mean "any person owning, operating, or chartering by demise, the vessel."[21] During this incident, Nature's Way was towing the MOC-12, which was a dumb barge.[22] By towing it, Nature's Way was operating the MOC-12 because it had no other means of propulsion to safely navigate up or down the Mississippi River. The speed, direction, and minute by minute navigational decisions

---

[16] *See*, letter from Jones Walker, attorney representing Nature's Way and EPG dated July 31, 2015, Exhibit C, Contract of Towage.

[17] In *Buffalo Marine* a tug collided with the TORM MARY, a vessel they were supplying bunker to, resulting in a penetration of the TORM MARY's hull and an oil discharge. The TORM MARY claimed the tug was a third-party Responsible Party. In an effort to avoid the language in 33 U.S.C. § 2703(a)(3) making the third-party defense inapplicable to entities involved in a contractual relationship with the RP, the parties argued that the tug was a sole fault third-party because the TORM MARY did not have a direct contractual relationship with the tug. Although the tug had been retained to supply fuel by the vessel's agent, they argued that the absence of a direct contractual relationship satisfied the requirements of 33 U.S.C. §2703(a)(3). The court rejected the tug's argument and agreed with the NPFC determination that even an indirect contractual relationship fulfilled the statutory requirement of "any contractual relationship." This finding meant that the tug could not be considered a sole fault third-party under 33 U.S.C. § 2702(d)(1).

[18] *See*, Letter from Jones Walker, attorney representing Nature's Way and EPG dated July 31, 2015, Exhibit C, Contract of Towage.

[19] Because Claimants have not established the threshold issue of whether they have paid removal costs or damages in excess of the applicable limit of liability, the NPFC will not analyze the remaining issues under 33 U.S.C. § 2704 controlling Claimants' entitlement to limited liability. If this Determination is overturned, then the NPFC will address those issues.

[20] 33 U.S.C. § 2701(32).

[21] 33 U.S.C. § 2701(26).

[22] A "dumb barge" is a non-self-propelled barge designed to be towed by another vessel. The MOC-12 was such a vessel by construction and practice.

governing the physical movement of the MOC-12 were controlled by Mr. Guidry, the trip pilot hired by Nature's Way, to move the MOC-12 down river. The Tug and barges acted as a "single unit" and Nature's Way, through the ENDEAVOR, operated the MOC-12 within the meaning of the OPA's definition of a RP. The allision occurred while the Tug and the barges were under the full navigational control of Mr. Guidry. Nature's Way, therefore, was properly designated as an RP operator.

The rationale for this determination is consistent with another OPA case, with similar fact to this case, in which a tug and dumb-barge were considered a "single unit" for the purpose of determining the RPs. In *Commonwealth of Puerto Rico v. M/V Emily S*, the tug EMILY S was towing the MORRIS J. BERMAN, a dumb-barge, when the towing wire between the tug and the barge parted. The barge grounded causing most of the oil carried as cargo to spill off the coast of Puerto Rico.[23] Like the MOC-12, the BERMAN was unmanned and had no means of self-propulsion. The tug owner argued that because the tug was not a "discharging vessel," it was not an RP. In determining otherwise, the court found:

> The barge was, in fact, under the complete control of the tugboat *Emily S* and all navigational decisions concerning the barge were made by the crew of the *Emily S*.
>
> Under this set of facts, it has been held before that "a tug is thus a necessary adjunct to a barge, and it seems natural to consider the two as a single entity." *In the Matter of Olympic Tug,* 1990 AMC 1671 (W.D. *2022 Wash. 1990). *See* also *The Civilta and the Restless*, 103 U.S. 699, 701-02 (1880) (finding that a tug and the ship she was towing were one vessel); *see* analogous reasoning on factor of control as basis of liability of tug in *Sturgis v. Boyer*, 65 U.S. 110, 122 (1860).
>
> The Court finds that the relationship between the tug *Emily S* and the tow *Morris J. Berman* in the particular circumstances of this case compel the conclusion that they were a single entity. Therefore, both the tug *Emily S* and the barge *Morris J. Berman* must be considered a "discharging vessel" under the terms of OPA, making the tug's owner, MCC, a "responsible party" for the oil spill.

The court in *Emily S.* partially relied on reasoning from the Supreme Court case *Sturgis v. Boyer*. In that case the U.S. Supreme Court stated that,

> "… whenever the tug, under the charge of her master and crew, and in the usual and ordinary course of such employment, undertakes to transport another vessel, which, for the time being, has neither her master nor crew on board, from one point to another, over waters where such accessory motive power is necessary or usually employed, she must be held responsible for the proper navigation of both vessels, and third persons suffering damages through the fault of those in charge of the vessel must, under such circumstances look to the tug, her master or owners, for the recompense which they are entitled to claim for any injuries…"[24]

---

[23] *Commonwealth of Puerto Rico v. M/V Emily S*, 13 F. Supp.2d 147 (D. Puerto Rico 1998).

[24] *Sturgis v. Boyer*, 65 U.S. 110 (1861).

8

In light of the statute's language and purpose, particularly its strict, joint and several liability provisions, it would be incongruous to exclude the tug – "the necessary adjunct to the barge" and the sole means for barge propulsion, from operator liability.

The NPFC rejects all of Claimants arguments against operator liability as lacking merit. For example, Claimants argued that Third Coast had operational control over the MOC-12 because Third Coast was responsible for instructing when the barge would be loaded, unloaded, and moved. However, this incident was proximately caused by the navigational errors committed by Nature's Way. There is no evidence suggesting that any of Third Coast's instructions had any causative effect on this oil spill. Additionally, the mere fact that Nature's Way operated the MOC-12 under a contract of towage instead of a bareboat charter did not lessen the absolute control over the barge exercised by Nature's Way when it struck the bridge pier. Similarly, the fact that Third Coast may have been identified as the "Vessel Owner/Operator" in the Vessel General Permit does not exonerate Nature's Way from liability as an operator. Nature's Way satisfies operator liability under the OPA because it had exclusive and absolute control over the barge when it struck the bridge pier and discharged oil.

### C. Claimants Mistakenly Rely on the Financial Responsibility Regulations

Even though Claimants concede that Nature's Way is a RP, Claimants attempt to avoid operator liability by relying on the regulations controlling how the barge established and maintained financial responsibility under 33 U.S.C. § 2716. In support of this argument, Claimants cite 33 C.F.R. § 138.20, which, for purposes of determining who must maintain financial responsibility, defines an operator as,

> [A] person who is an owner, a demise charter, or other contractor, who conducts the operations of, or who is responsible for the operation of a vessel. A builder, repairer, scrapper, lessor, or seller who is responsible, or who agrees by contract to become responsible, for a vessel is an operator. A time or voyage charterer that does not assume responsibility for the operation of a vessel is not an operator for the purpose of this subpart.

Claimants argue that Nature's Way was not an operator because (1) Nature's Way's contract with Third Coast is "most analogous to a time or voyage charter" and that they did not assume responsibility for the operation of the barge under that charter; and (2) they were not required to provide evidence of financial assurances for the MOC-12.[25]

Claimants' reliance on this regulatory definition is misplaced. At the outset, the definition only applies to Subpart A – Financial Assurances and does not purport to affix liability. The purpose of Subpart A is to inform owners and operators of vessels when and to what extent they must obtain financial surety for a vessel in the event of a spill. The regulations were intended to create a procedure for establishing and maintaining financial responsibility under 33 U.S.C. § 2716, not determining who would be liable under 33 U.S.C. § 2702.[26]

---

[25] *See*, Letter from Jones Walker, attorney representing Nature's Way and EPG dated July 31, 2015, page 4.

[26] 33 C.F.R. § 138.10.

9

When 33 C.F.R. Part 183 was originally published in the Federal Register, the Coast Guard made it clear that the regulatory definition of an operator was simply intended to identify who must apply for a COFR. Contrary to the Claimants' argument, the regulation was not intended to control who would be liable as a RP. The Coast Guard explained:

> The primary reason for this definition is to identify the operator entity who should apply for a COFR. **The definition is not intended to address the issue of what other entities, because of their specific relationship to a vessel, Congress may have intended to be considered responsible parties under OPA 90 or CERCLA.** The Coast Guard also designed this definition of a COFR applicant (1) to provide flexibility to those associated with the operation of vessels when deciding what constitutes a fleet; (2) to encompass persons who have custody of or are responsible for vessels held solely for building, repairing, sale, lease, or scrapping and; (3) to exclude certain so-called "operators" such as traditional time or voyage charterers (see 59 FR 34217). [27]

Based upon the above, the regulations cited by Claimants only apply to OPA's financial surety requirements and have no applicability when determining whether a party will be liable as an operator. However, even if the regulations did control operator liability under the OPA, the regulation cited by Claimants would not exclude Nature's Way from liability. A time or voyage charterer is only exempt from the financial responsibility requirements under 33 C.F.R. § 138.20 when it does not assume responsibility for the vessel's operation. In this case, contrary to Claimants' arguments, Nature's Way had complete operational control over the barge when the ENDEAVOR pushed the MOC 12 into the bridge and caused this oil spill. Therefore, even under the financial responsibility regulations, Nature's Way was an operator.

Claimants also argued that Nature's Way should not be an operator of the MOC 12 because the regulations implementing 33 U.S.C. § 2716 did not require Nature's Way to maintain financial responsibility sufficient to cover both the tug and barge. This argument lacks merit. As explained above, the regulatory definition of an operator implementing 33 U.S.C. § 2716 does not control who may be a RP under 33 U.S.C. § 2702.

### D. Claimants Released Their Rights Against Third Coast

Even if Claimants had shown an entitlement to limited liability, this claim must still be denied because Claimants prejudiced their right of recovery against a RP. In order to ensure that the OSLTF can pursue cost recovery against RPs, the OPA imposes several requirements that must be satisfied before a claim may be paid. Of relevance here, 33 U.S.C. § 2712 (f) provides: "Payment of any claim or obligation by the Fund under this Act shall be subject to the United States Government acquiring by subrogation all rights of the claimant or State to recover from the responsible party." Based upon this requirement, a claim must be denied if the claimant's right of recovery against a RP has been prejudiced.

The court in *Rick Franklin Corp. v. U.S. Department of Homeland Security*, Civil No. 06-1647-SU, 2008 WL 337978 (D. Or.), upheld the NPFC's denial of a claim based upon the

---

[27] Financial Responsibility for Water Pollution (Vessels), 61 Fed. Reg. 9264, 9267 (March 7, 1996)(emphasis added).

claimant's inability to subrogate all its rights to the OSLTF due to a release. In that case, the claimant was a clean-up contractor hired by a RP. After a fee dispute arose, claimant sued both the RP and its primary insurance carrier. As part of the subsequent settlement agreement, the claimant received a stipulated judgment against the RP, but released any right to enforce that judgment. The claimant intended to pursue an assigned claim against RP's secondary insurer to collect the amount not covered by the settlement. After the secondary insurer refused to pay, the claimant submitted a claim against the OSLTF. The NPFC denied the claim because the settlement released at least some of the claimant's rights against the RP.

In response to NPFC's denial of the claim, the claimant in *Rick Franklin Corp.*, filed suit against the NPFC arguing that 33 U.S.C. § 2712 (f) only required it to subrogate the rights held at the time of OSLTF payment. Relying on an Eleventh Circuit decision, the *Rick Franklin Corp.* court explained why this argument was incorrect with the following:[28]

> The government contends that its interpretation of 33 U.S.C. § 2712 (f), the disputed section of the OPA, is supported by *Kenan Transport Co., v. U.S. Coast Guard*, No. 1:04-CV_3186-WSD, 2006 WL 1455658 (N.D. Ga. May 19, 2006), aff'd, No. 06-13876, 2006 WL 3749570 (11th Cir. Dec. 21, 2006), a recently decided case addressing this same issue. In *Kenan*, the District Court in the Northern District of Georgia held that "[r]eimbursement is allowed only if claims against the third party are preserved so they may be asserted by the Government as subrogee of the claims." *Kenan*, 2006 WL 1455658 at *4. The court found that, under Georgia law, the release the claimant signed with the responsible party was sufficiently broad that the condition of § 2712 (f) was violated, and that the decision to deny the claimant's reimbursement claims was not arbitrary, capricious, an abuse of discretion or not in accordance with applicable law. *Id.* at *5. On appeal, the Eleventh Circuit Court of Appeals affirmed the district court's interpretation of the disputed section and the government's denial of the claimant's reimbursement claim "because *Kenan* was unable to transfer its rights to clean-up costs to the government as required by § 2712 (f)." 2006 WL 3749570 at *3.
>
> RFC [Rick Franklin Corp.] argues that claimants should not be required to "preserve" subrogation claims against responsible parties as the court found in *Kenan*. RFC attempts to distinguish *Kenan* from the case at bar by pointing to *Kenan's* focus on Georgia contract law. RFC contends that adding the preservation requirement into the statute harms the purpose of the Fund which is to pay the claims of parties that expeditiously remediate oil spills. RFC advocates a reading of § 2712 (f) that would provide the government with all the subrogation rights a claimant possessed at the time of payment of the claim. RFC claims that the NPFC could have acquired by subrogation the excess insurance policy, the only asset Larkin Transport had at the time RFC made its claim to the Fund. Finally, RFC argues that the NPFC's reading of § 2712 (f) creates a defense to liability and that the OPA's section addressing defenses to liability, where a claimant is grossly negligent or exhibits willful misconduct, is exclusive. *See* § 2712 (f).

---

[28] *Rick Franklin Corp. v. U.S. Department of Homeland Security*, 2008 WL 337978 (D. Or.).

11

RFC's arguments are not persuasive. The plain language of § 2712 (f) uses the words "all rights" when describing what subrogation rights will be acquired by the government when a claimant is compensated by the Fund. No time limitation or any other limitation is contained in that section. The language of the statute gives no indication that Congress intended any limitation on the government's subrogation rights. The statute clearly provides that a claimant must be able to supply the government with *all* of its subrogation rights against a responsible party. RFC's interpretation that the statute should be read to mean that all rights actually means the subrogation rights a claimant possessed *at the time of payment of the claim* is not supported by the plain language of the statute.

In this claim, Claimants prejudiced their right of recovery against Third Coast by executing the Receipt, Release, Indemnification and Assignment Agreement.[29] The parties to this agreement included Natures Way, Third Coast, and Atlantic Specialty Insurance Company.[30] Among other things, the agreement released any right of recovery by Nature's Way against Third Coast and its insurers for this OPA incident.

The agreement reads in part:

> "Nature's Way and Third Coast enter into this Settlement Agreement in order to fully and completely settle, satisfy, compromise, and *discharge any and all claims for losses and damages of whatever nature and kind that the Parties here raised, or could have raised, against each other from the damage allegedly sustained and the spill, cleanup, salvage, and related efforts*, ("the Events") on or about January 29, 2013."[31]

The agreement also provides:

> "1. <u>Release and Discharge</u>
>
> BE IT KNOWN TO ALL MEN that for and in consideration of the settlement described in Part 2 below (entitled "Payments"), the receipt of which is hereby acknowledged by Third Coast, and other valuable consideration, the *Parties do hereby release, remise, and forever discharge each other*, and each Parties' vessels, agents, underwriters, insurers, employees, crews, directors, officers, predecessors, parents, successors, affiliated/related corporations, partnerships, joint venture interests, and/or operating entities, vessel operators and/or vessel managers, and the underwriters of all the entities listed above, in any capacity, (the "Released Parties") *who/which may be, or may later become, liable from any and all manner of actions, suits and/or claims for damages which the Parties, in any capacity, now have or may hereafter acquire, whether known or*

---

[29] *See*, Letter from Jones Walker, attorney representing Nature's Way and EPG dated July 31, 2015, Exhibit F, Receipt, Release, Indemnification and Assignment Agreement.

[30] *See*, Letter from Jones Walker, attorney representing Nature's Way and EPG dated July 31, 2015, Exhibit F, Receipt, Release, Indemnification and Assignment Agreement, page 1.

[31] *See*, Letter from Jones Walker, attorney representing Nature's Way and EPG dated July 31, 2015, Exhibit F, Receipt, Release, Indemnification and Assignment Agreement, page 1, second paragraph (emphasis added).

*unknown, against each other, arising out of or in any way related to the Events,* and all other rights and causes of action under the maritime laws or statutes of the Unites States of America and /or, if necessary, the law of the State of Louisiana, and/or any other law or laws of any other state or country which may afford a right or cause of action for any other legally recoverable category of loss or damage arising out of or in any way, directly or indirectly, related to the Events.

*The Parties acknowledge and agree that the release and discharge set forth in this document is a general release. They further agree that payment of the sums specified herein, or other valuable consideration, is accepted as a complete compromise and discharge of all losses or claims. The Parties assume the risk that the facts or law may be other than believed.* Moreover, the Parties understand and agree that this settlement is a compromise of disputed losses or claims, and the payments, or other valuable consideration, are not to be construed as admissions of liability on the part of any Party, by whom liability is expressly denied.."[32]

In addition to the settlement agreement, the lawsuit between Third Coast and Nature's Way in the United States District Court for the Southern District of Alabama was dismissed with prejudice on December 31, 2014. Because this lawsuit arose from the OPA incident at issue here, Nature's Way is precluded from bringing another lawsuit against Third Coast to recover the costs claimed by Claimants. Just like the release in the settlement agreement, the dismissal with prejudice prevents Nature's Way from bringing another lawsuit against Third Coast to recover damages resulting from this oil spill.

Claimants cannot satisfy the requirement of 33 U.S.C. § 2712 (f) to subrogate all of their rights against a RP. In the settlement agreement, Nature's Way released its right of recovery against Third Coast. Additionally, the dismissal of the lawsuit on December 31, 2014 precludes any further litigation by Nature's Way against Third Coast. Consequently, even if Claimants could establish an entitlement to limited liability under 33 U.S.C. § 2704, this claim must still be denied because Claimants cannot subrogate all of their rights against Third Coast to the United States.

## IV. CONCLUSION

Based upon the foregoing, this claim must be denied.

Claim Supervisor: *Thomas S. Morrison*

Date of Supervisor's review: 03/16/2016

Supervisor Action: Denial Approved.

Supervisor's Comments:

---

[32] *See,* letter from Jones Walker, attorney representing Nature's Way and EPG dated July 31, 2015, Exhibit F, Receipt, Release, Indemnification and Assignment Agreement, page 2, third paragraph through page 3 (emphasis added).

13

# Glossary of Terms:

**APPLICABLE LAW & DEFINITIONS:**

The elements liability under OPA, provide that "...each responsible party for a vessel or a facility from which oil is discharged, or which poses the substantial threat of a discharge of oil, into or upon the navigable waters or adjoining shorelines...is liable for the removal costs and damages specified in subsection (b) that result from such incident." 33 U.S.C. § 2702(a).

"Liable" or "Liability" shall be construed to be the standard of liability which obtains under section 311 of the Federal Water Pollution Control Act (33 USC 1321);" OPA §1001(17)(33 USC §1001(17)). The standard of liability under section 311 of the FWPCA has been determined repeatedly to be strict, joint and several. Conference Report, House Report No. 101-653 (August 1, 1990), p. 102.

"Responsible Party" in the case of a vessel is defined as any person owning, operating, or demise chartering the vessel. 33 U.S.C. § 2701(32) (A).

"Operator" in the case of a vessel is defined as any person owning, operating, or chartering by demise, the vessel. 33 U.S.C. § 2701(26) (A).

"Removal costs" are defined as the costs of removal that are incurred after a discharge of oil has occurred or, in any case in which there is a substantial threat of a discharge of oil, the costs to prevent, minimize, or mitigate oil pollution from such an incident. 33 U.S.C. § 2701(31).

"Incident" is defined as any occurrence or series of occurrences having the same origin, involving one or more vessels, facilities, or any combination thereof, resulting in the discharge or substantial threat of discharge of oil, the costs to prevent, minimize or mitigate oil pollution from such an incident. 33 U.S.C. § 2701(14).

"Claim" The responsible party for a vessel or facility from which oil is discharged, or which poses a substantial threat of a discharge of oil, may assert a claim for removal costs and damages under 33 U.S.C. § 2713 only if the responsible party demonstrates that (1) the responsible party is entitled to a defense to liability under section 2703 of this title; or (2) the responsible party is entitled to a limitation of liability under section 2704 of this title. 33 U.S.C. § 2708(a)(1) and (2).

"Rights of subrogation" Payment of any claim or obligation by the Fund under this Act shall be subject to the United States Government acquiring by subrogation all rights of the claimant or State to recover from the responsible party. 33 U.S.C. § 2712(f).

"Limitation of Liability" A responsible party who is entitled to a limitation of liability may assert a claim under section 2713 of this title only to the extent that the sum of the removal costs and damages incurred by the responsible party plus the amounts paid by the responsible party, or by the guarantor on behalf of the responsible party, for claims asserted under section 2713 of this title exceeds the amount to which the total of the liability under section 2702 of this title and removal costs and damages incurred by, or on

14

behalf of, the responsible party is limited under section 2704 of this title. 33 U.S.C. § 2708(b).

Subsection (1) (a) of section 2704 does not apply if the incident was proximately caused by (A) gross negligence or willful misconduct of, or (B) the violation of an applicable Federal safety, construction, or operating regulation by, the responsible party, an agent or employee of the responsible party, or a person acting pursuant to a contractual arrangement with the responsible party (except where the sole contractual arrangement arises in connection with carriage by a common carrier by rail, or (2) if the responsible party fails or refuses (A) to report the incident as required by law and the responsible party knows or has reason to know of the incident;(B) to provide all reasonable cooperation and assistance requested by a responsible official in connection with removal activities; or (C) without sufficient cause, to comply with an order issued under subsection (c) or (e) of section 1321 of this title or the Intervention on the High Seas Act. 33 U.S.C. § 2704(c)(1) and (2).

The President shall promulgate, and may from time to time amend, regulations for the presentation, filing, processing, settlement, and adjudication of claims under this Act against the Fund. 33 U.S.C. § 2713(e). The claims regulations are found at 33 C.F.R. Part 136.

"Burden" The claimant bears the burden of providing all evidence, information, and documentation deemed necessary by the Director, NPFC, to support the claim. 33 CFR 136.105(a).

15