UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff<br><br>v.<br><br>THIRD COAST TOWING, LLC,<br>GREAT AMERICAN INSURANCE<br>AND NATURE'S WAY MARINE, LLC<br><br>    Defendants<br><br>AND<br><br>GREAT AMERICAN INSURANCE<br>COMPANY<br><br>    Cross-Claimant<br><br>v.<br><br>THIRD COAST TOWING, LLC<br><br>    Cross-Defendant<br><br>AND<br><br>GREAT AMERICAN INSURANCE<br>COMPANY<br><br>    Third Party Plaintiff<br><br>v.<br><br>AMERICAN STEAMSHIP OWNERS<br>MUTUAL PROTECTION & INDEMNITY<br>ASSOCIATION, INC. (THE AMERICAN<br>CLUB)<br><br>    Third Party Defendant | Civil Action No. 3:16cv34CWR-FKB |

**PLAINTIFF UNITED STATES' MEMORANDUM IN SUPPORT OF IT'S MOTION TO DISMISS COUNTERCLAIM OF NATURE'S WAY MARINE AND ENVIRONMENTAL POLLUTION GROUP UNDER FED. R. CIV. P. 12(b)(6)**

I.  INTRODUCTION

On January 22, 2016, the United States filed its complaint against Nature's Way Marine, LLC and Third Coast Towing, LLC for recovery of $792,868.98 of oil spill removal costs and, in addition, civil penalties arising from the discharge of oil released into the Mississippi River from a tank barge owned by Third Coast and propelled by a tugboat owned by Nature's Way. Nature's Way and its insurer, Environmental Pollution Group, LLC ("collectively "Nature's Way"), filed a counterclaim against the United States seeking "equitable and declaratory relief" because the National Pollution Funds Center ("NPFC") of the United States Coast Guard denied Nature's Way's administrative claim of $2,138,382.14 for reimbursement of oil spill cleanup costs. Nature's Way requests this Court find that the NPFC's denial was arbitrary and capricious, enter a judgment in the amount of $2,138,382.15, and "abate or off-set" the United States' claim against this amount. Nature's Way further asks this Court to grant a "trial *de novo*." As will be shown, Nature's Way is not entitled to the remedies it seeks, as a matter of law, because its counterclaim is an appeal of a final administrative determination cognizable only under the Administrative Procedure Act ("APA"). Accordingly, the United States respectively moves this Court to dismiss the counterclaim under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## II. STATUTORY HISTORY AND FRAMEWORK

### A. The Oil Pollution Act of 1990

The Oil Pollution Act ("OPA") is a comprehensive oil spill response and liability statutory scheme designed by Congress to ensure "those who produce, handle, and transport oil" are held strictly liable for removal costs and damages resulting from the discharges of oil. *See* H.R. Rep. No. 101-242, Part 2 at 36 (1989). OPA establishes (1) a strict liability scheme for oil spill removal costs and related damages, and (2) an administrative adjudication process by which the United States pays eligible claims for those costs under prescribed conditions. 33 U.S.C. §§ 2701, *et seq*.

Passed in the wake of the Exxon Valdez, OPA ushered in several landmark reforms. First, it strengthened measures for oil spill prevention, requiring oil tankers over 5,000 gross tons constructed after 1990 to have double hulls and requiring the issuance of interim spill prevention rules for single-hull vessels. Second, OPA increased the financial consequences of oil spills by: (1) imposing strict, joint, and several liability[1] for cleanup costs and certain categories of damages; (2) raising the liability limit for vessels; (3) abrogating the liability limit where acts of the polluter – the Responsible Party – were grossly negligent or violated a federal regulation and proximately caused the oil spill; and, (4) significantly limiting defenses. *Apex Oil Company v. United States*, 208 F.Supp.2d 642, 651-52 (E.D. La. 2002); *see also*, *Buffalo Marine Services Inc. v. United States*, 663 F.3d 750, 752 (5th Cir. 2011).

---

[1] "The term 'liable' or 'liability' . . . is to be construed to be the standard of liability which obtains under section 311 of the FWPCA [Federal Water Pollution Control Act] . . . . That standard of liability has been determined repeatedly to be strict, joint and several liability." H.R. Rep. 101-653 at 102 (1990) (Conf. Rep.).

3

OPA also provides a framework to compensate individuals, businesses, and governmental entities for cleanup costs as well as for specifically enumerated categories of damages. The framework addresses payment of OPA compensable damages where the Responsible Party (RP) is unknown, refuses to pay, or is entitled to liability limitation. 33 U.S.C. §§ 2712 and 2713. Eligible claimants are compensated by the Oil Spill Liability Trust Fund ("Fund") which is intended to ensure prompt and complete recovery for damages arising from an oil spill. *Apex Oil*, 208 F.Supp.2d, at 651-52. As will be shown, under certain circumstances the RP or its insurer can also make a claim to the Fund.

### B. Coast Guard's National Pollution Funds Center Adjudicates Claims to the Fund

The United States Coast Guard is charged with implementing the relevant provisions of OPA which includes adjudicating claims to the Fund.[2] 33 U.S.C. §§ 2712, 2713, 2714, 2716, 1716a. Within the Coast Guard, these tasks have been delegated to the NPFC. OPA establishes categories of eligible claimants and claims, as well as general procedures for bringing those claims to the NPFC for adjudication. 33 U.S.C. §§ 2712-2713. These procedures do not require the NPFC to conduct formal hearings under the APA, 5 U.S.C. § 554, and thus the NPFC's decision making is informal. 33 U.S.C. § 2713(a)-(e); *Bean Dredging, LLC, v. United States,* 773 F. Supp.2d 63, 75 (D.D.C. 2011) (OPA does not require a formal hearing; NPFC's review of a claim for reimbursement is an informal adjudication); *see generally Woods v. Federal Home Loan Bank Board*, 826 F.2d 1400, 1408 (5th Cir. 1987). OPA, however, requires the NPFC to promulgate regulations instituting more detailed procedures for the adjudication of claims for

---

[2] See Ex. Order No. 12777, October 18, 1991, 56 F.R. 54757, delegating responsibility from the President of the United States to the Coast Guard. The Fund was created by 26 U.S.C. § 9509.

"uncompensated removal costs and uncompensated damages resulting from the discharge . . . ." 33 U.S.C. § 2713(e); 33 C.F.R. §§ 136.1(a)(1); *Gatlin Oil Co., Inc. v. United States*, 169 F.3d 207, 211 (4th Cir. 1999). These claim procedures are found at 33 C.F.R. Part 136, Subpart C. The Fund is available to pay claims for uncompensated removal costs determined by the NPFC to be consistent with the National Contingency Plan ("NCP").[3]

C. **Claims to the Fund by a Responsible Party**

While OPA is a strict liability statute, it permits an RP to be reimbursed from the Fund for qualified oil spill removal costs under limited circumstances. 33 U.S.C. §§ 2708(a) and (b); *Gatlin,* 169 F.3d at 211. This is a two-step process. An RP must first prove it is entitled to a complete defense or, as in this case, to a right to limit its liability to a certain amount based on the size of the vessel involved. 33 U.S.C. §§ 2708(a), 2712(a)(4); 33 C.F.R. § 136.205. To be eligible to limit its liability, the incident must not be "proximately caused by (A) gross negligence or willful misconduct or, (B) violation of an applicable Federal safety, construction, or operating regulation by the responsible party, an agent, or employee of the responsible party, or a person acting pursuant to a contractual relationship." 33 U.S.C. § 2704(c)(1). Limitation amounts are based on vessel gross tonnage. 33 U.S.C. § 2704(a)(1)(A).

If the RP believes it is entitled to limit its liability and to recover costs beyond its limitation amount, it must submit a claim, along with supporting documentation, to the

---

[3] OPA provides: "The Fund shall be available to the President for – . . . (4) payment of claims in accordance with section 2713 of this title for uncompensated removal costs determined by the President to be consistent with the National Contingency Plan for uncompensated damages;" 33 U.S.C. § 2712(a)(4). The NCP is the federal government's blueprint for responding to oil spills and releases of hazardous substances and authorizes the establishment of the NPFC. 33 U.S.C. § 1321(d)(4); 40 C.F.R. § 300.5. *See generally* 40 C.F.R. § 300 *et seq*.

5

NPFC. If the NPFC determines that the RP is entitled to limitation, then the NPFC will evaluate whether the costs submitted by the RP are compensable removal costs and thus reimbursable from the Fund. Under the NPFC regulations, removal costs are compensable if the RP demonstrates by a preponderance of the evidence: (1) the actions taken were necessary to prevent, minimize, or mitigate the effects of the incident; (2) removal costs were incurred as a result of these actions; (3) actions taken were determined by the Federal On Scene Coordinator ("FOSC")[4] to be consistent with the NCP or were directed by the FOSC; and, (4) costs were reasonable as determined by the NPFC. 33 C.F.R. §§ 136.105; 136.203 and 136.205. The burden is on the RP to produce sufficient documentation to support its removal costs claim. 33 C.F.R. § 136.105.

Payment by the NPFC is also contingent upon the claimant subrogating to the United States all rights it has against other parties. Specifically, OPA provides that "[p]ayment of any claim or obligation by the Fund under this Act shall be subject to the United States Government acquiring by subrogation all rights of the claimant . . . to recover from the responsible party." 33 U.S.C. § 2712(f); *Rick Franklin Corp. v. Dep't of Homeland Security,* 2008 WL 337978 at *6 (D.C. Or. February 4, 2008) *Kenan Transport. Co. v. United States Coast Guard,* 211 Fed. Appx 902, 903 (11th Cir. 2006). Thus, whether limitation is available to the RP and further, whether the RP is entitled to reimbursement of the asserted removal costs entails two separate administrative determinations by the NPFC.

---

[4] The Coast Guard directs oil spill cleanup through the FOSC who is authorized to "direct or monitor all federal, state, and private actions to remove a discharge." 33 U.S.C. § 1321(c)(1)(B); 40 C.F.R. §§ 300.120(a), 300.135(a), 300.305(c) and (d).

### III. NATURE'S WAY'S AND EPG'S ADMINISTRATIVE CLAIM

#### A. The Incident

Third Coast entered into a towage agreement with Nature's Way whereby the tug owned and operated by Nature's Way would tow two of Third Coast's barges laden with crude oil from Caloosa, Oklahoma to a discharge port in Louisiana. On January 26, 2013, Nature's Way's tug, the ENDEAVOR, was proceeding southbound on the lower Mississippi River pushing the two barges. Both barges allied with pier 4 of the Vicksburg Bridge resulting in a discharge of over 7,100 gallons of oil from the barge MOC-12. The Coast Guard issued notices of potential liability as an RP under OPA to both Nature's Way and EPG, as Guarantor of the ENDEAVOR, on January 28, 2013, January 31, 2013, and May 12, 2014.[5] Nature's Way undertook oil spill removal and cleanup operations pursuant to the oversight provided by the Coast Guard's FOSC and the Unified Command established by the Coast Guard. See generally documents attached to Answer and Counterclaim, ECF No. 7, Appendix A.

#### B. Related Litigation Between Third Coast and Nature's Way

On September 25, 2013, Third Coast filed suit against Nature's Way for breach of the contract of towage and commission of a maritime tort seeking damages of $2,658,097.45. The parties entered into a settlement agreement in which Nature's Way paid $50,000 to Third Coast and $1,950,000 to its insurer, Atlantic Specialty Insurance Company. Both parties released each other of "all claims for losses and damages of whatever nature and kind that the Parties raised, or could have raised, against each other from the damage allegedly sustained and the spill, cleanup, salvage and related efforts . . .

---

[5] The Coast Guard also issued notices of potential liability as a Responsible Party to Third Coast and to Great American Insurance Group as Guarantor of MOC 12.

." The case was dismissed with prejudice.[6] Appendix B to Answer and Counterclaim, ECF No. 7-2; Attachment 1, Settlement Agreement.

### C.    Submission of Claim to the NPFC for Administrative Adjudication

On May 22, 2015, Nature's Way and EPG submitted a claim of $2,138,382.15 to the NPFC for OPA compensable removal costs, calculated by subtracting the OPA limitation of liability for the ENDEAVOR, $854,400.00, from their alleged total oil removal costs of $2,992,782.15.  From their claim of $2,138,382.15, claimants also sought abatement or set-off of removal costs previously billed to them by the United States in the amount of $792,868.98, in effect reducing the claim to $1,234,913.17.  In response, the NPFC sent a letter to claimants on June 24, 2015 raising two issues.  First, because the proper limit of liability was $4,272,000, based on the size of discharging vessel, the barge MOC-12, claimants had not likely exceeded their limitation of liability. Second, because the settlement between Third Coast and Nature's Way had bearing on whether Nature's Way retained subrogation rights as required by OPA section 2712(f), the NPFC requested additional documentation including the settlement agreement.  See Appendix B to Answer and Counterclaim, ECF No. 7-2 page 15 of 39.  On July 31, 2015, claimants provided supplemental information to their claim including the settlement agreement in full.  Appendix B to Answer and Counterclaim, ECF No. 7-2; Attachment 1, Settlement Agreement.

On March 16, 2016, the NPFC denied payment of claim because (1) claimants had not exceeded the applicable limitation amount of $4,272,000 and (2) claimants failed to retain subrogable rights when Nature's Way entered into the settlement agreement with

---

[6] *Third Coast Towing, LLC v. Nature's Way Marine, LLC,* No. 1:1:14-47, ECF No. 90 (S.D. AL Dec. 31, 2014).

Third Coast. The NPFC excerpted relevant provisions of the settlement agreement in its administrative determination.[7] Answer and Counterclaim, ECF No. 7, para. 13-17; See Attachment 2, NPFC Determination.

## IV. STANDARD OF REVIEW

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) ("failure to state a claim upon which relief can be granted") tests the adequacy of the complaint on its face. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) *citing*, *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007); *New Orleans City v. Ambac Assurance Corp*., 815 F.3d 196, 200 (5th Cir. 2016); *In re Katrina Canal Breaches Litig*., 495 F.3d 191, 205 (5th Cir. 2007). While the court must accept as true the allegations contained in a complaint, this is not so with respect to legal conclusions. "Threadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." Furthermore, unless the complaint states a "plausible claim for relief," it cannot survive a motion to dismiss. *Iqbal,* 556 U.S. at 662.

## V. COUNTERCLAIM IS GOVERNED BY THE APA

Counterclaimants urge this Court to find the NPFC's denial of their claim to be arbitrary, capricious, or an abuse of discretion, yet seek as their remedy a trial *de novo* and an award of damages in their favor. Nature's Way also requests this Court

---

[7] According to the Settlement Agreement: "Nature's Way and Third Coast enter into this Settlement Agreement in order to fully and completely settle, satisfy, compromise, and *discharge any and all claims for losses and damages of whatever nature and kind that the Parties here raised, or could have raised, against each other from the damage allegedly sustained and the spill, cleanup, salvage, and related efforts,* ("the Events") on or about January 29, 2013." (emphasis added). Attachment 1 at p.12-13.

to abate or set-off the amount the United States' is owed against the removal costs they assert they are owed. While counterclaimants are entitled under the APA to seek judicial review of the NPFC's final agency action based on the administrative record, the APA precludes the remedies they seek here.

## A. Standard of Review is Whether Agency Action was Arbitrary, Capricious, or an Abuse of Discretion Based on Administrative Record

Under the APA, it is the agency, not the court, that resolves factual issues to arrive at a decision. *James Madison Ltd, v. Ludwig*, 82 F.3d 1085, 1096 (D.C.Cir. 1996) ("[D]istrict courts reviewing agency action under the APA's arbitrary and capricious standard do not resolve factual issues, but operate instead as appellate courts resolving legal questions."). The statute permits the court to overturn an agency's decision only if it is arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence on the record taken as a whole. *Buffalo Marine*, 663 F.3d at 753. The court starts from the presumption that the agency's decision is valid and thus, judicial review of that decision is "highly deferential." *Id*. 753-754; 33 U.S.C. § 706(2)(A); *see other* NPFC cases finding the standard of review to be highly deferential including *Murphy Oil USA Inc. v. United States,* 8 F.Supp.3d 811, 813 (E.D. La. 2014); *Baby Oil, Inc. v. United States,* 938 F. Supp. 2d 640, 643-44 (E.D. La. 2013); *Apex Oil*, 208 F.Supp.2d at 648-50; *International Marine Carriers v. Oil Spill Liab. Trust Fund,* 903 F. Supp. 1097, 1102-1103 (S.D. Tex. 1994); *see also Miss. River Basin Alliance v. Westphal,* 230 F.3d 170, 175 (5th Cir. 2000) (courts must be particularly deferential to agency determinations made within the scope of the agency's expertise). To the extent the agency's determination is necessarily based on questions of statutory interpretation,

the court owes substantial deference to the agency's construction of a statute that it administers. *Buffalo Marine,* 663 F.3d at 753-54; *Apex Oil*, 208 F.Supp.2d at 648-50

For informal agency actions, such as NPFC determinations, in which a hearing is not required, judicial review is based on the agency record. *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 744 (1985); *Markle Interests LLC v. U.S. Fish and Wildlife Service,* 40 F. Supp.3d 744, 754 (E.D. La. 2015) *citing Medina County Environmental Action Ass'n v. Surface Transp. Bd.,* 602 F.3d 687, 706 (5th Cir. 2010); ("[T]he general presumption [is] that review [of agency action] is limited to the record compiled by the agency."). *Markle,* 40 F.Supp.3d at 754-55 *citing Medina County Environmental Action Ass'n v. Surface Transp. Bd.,* 602 F.3d 687, 706 (5th Cir. 2010); *Goonsuwan v. Ashcroft,* 252 F.3d 383, 391 n. 15 (5th Cir. 2001) *citing Lorion,* 470 U.S. at 743–44 ("It is a bedrock principle of judicial review that a court reviewing an agency decision should not go outside of the administrative record.").

Rather than judicial review of the NPFC's decision to deny limitation of liability based on the record, counterclaimants seek *de novo* review by this Court. However, *de novo* review of agency action is an extraordinary step limited by the Supreme Court, under 5 U.S.C. § 706(2)(F), to situations where the action is adjudicatory in nature - that is, a formal action requiring a hearing - and where agency factfinding procedures are inadequate; or where judicial proceedings are brought to enforce certain administrative actions. Richard J. Pierce, Jr., Administrative Law Treatise, § 11.3 (5th ed. 2010); *Sierra Club v. Glickman,* 67 F.3d 90, 96 (5th Cir. 1995) *citing Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415 (1971); *Camp v. Pitts*, 411 U.S. 138, 141–42 (1973); Zevallos v. Obama, 793 F.3d 106, 112 (D.C. Cir. 2015) (*De novo* review is an

"extraordinary and rare step."). The NPFC's decision is not formal and Nature's Way's claim is not an action to enforce an administrative decision. Accordingly, counterclaimants' request for *de novo* review of the NPFC's informal adjudication is unavailable under the APA.

B. **Remedy for Decision Deemed Arbitrary or Capricious is Remand to Agency**

Counterclaimants seek a judgment of $2,138,782.15 for costs they incurred in cleaning up the spill and set-off or abatement in the amount of $792,868.98. However, this remedy is also unavailable under the APA. The Supreme Court has made clear that where it finds that an agency's action is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance of law, the "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *INS v. Orlando Ventura*, 537 U.S. 12, 16 (2002) *citing Lorion*, 470 U.S. at 744); *District Hosp. Partners, L.P. v. Burwell,* 786 F.3d 46, 60 (D.C. Cir. 2015).

Ultimately, summary judgment is the appropriate mechanism to determine whether, as a matter of law, the agency action is supported by the administrative record and consistent with the APA standard of review. *Overton Park*, 401 U.S. at 415; *Southwest Merchandizing Corp. v. NLRB*, 53 F.3d 1334, 1341 (D.C. Cir. 1995). If, on motions for summary judgment, a court were to determine based on the administrative record, that the NPFC's decision to deny limitation is arbitrary, capricious, or an abuse of discretion, the proper course of action would be to remand back to the NPFC for further determinations consistent with the court's opinion. Upon remand, should the NPFC find that counterclaimants are entitled to limitation,

only then would the agency reach the issue of what is reimbursable under OPA and its implementing regulations.

## VI. CONCLUSION

Counterclaimants' challenge to the NPFC's denial of their administrative claim is governed by the APA. The relief requested - a trial *de novo*, equitable and declaratory relief for reimbursement, a monetary award, and set-off or abatement - is impermissible under the APA, and thus, this Court should dismiss Nature's Way's counterclaim under Fed. R. Civ. Proc. 12(b)(6).

Dated: May 13, 2016

        Respectfully submitted,

        BENJAMIN C. MIZER
        Principal Deputy Assistant Attorney General

        STEVEN G. FLYNN
        Assistant Director Admiralty
        U.S. Department of Justice
        Aviation & Admiralty Litigation
        Torts Branch, Civil Division

        /s/ Sharon K. Shutler
        SHARON K. SHUTLER
        Trial Attorney
        Aviation & Admiralty Litigation
        Torts Branch, Civil Division
        P.O. Box 14271
        Washington, DC 20044-2471
        Tel: (202) 616-4046
        Fax: (202) 616-4002
        Email: Sharon.Shutler@usdoj.gov

        ELLEN M. MAHAN
        Deputy Section Chief
        Environmental Enforcement Section
        Environment and Natural Resources
        Division

United States Department of Justice

/s/ Elise S. Feldman
ELISE S. FELDMAN
Senior Counsel
United States Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
301 Howard Street, Suite 1050
San Francisco, CA  94105
Tel: (415) 744-6470
Fax: (415) 744-6476
Email: Elise.Feldman@usdoj.gov

*Attorneys for Plaintiff*
UNITED STATES OF AMERICA

Of Counsel:
LCDR Nicholas J. Tabori
National Pollution Funds Center
U.S. Coast Guard Stop 7605
2703 Martin Luther King Jr. Ave.
Washington, DC  20593-6064

LCDR Christopher L. Jones
Office of Claims and Litigation
Coast Guard Headquarters
2703 Martin Luther King Jr. Ave. SE
Washington, DC  20593-7213

LT Gretal G. Kinney, UCSG
Senior Staff Attorney
Eight Coast Guard District
Hale Boggs Federal Building
500 Poydras Street
New Orleans, LA  70130

**CERTICATE OF SERVICE**

I HEREBY CERTIFY that on May 13, 2016, I served the foregoing Plaintiff United States of America's Motion to Dismiss on the following counsel of record by way of the CM/ECF system which will provide each counsel a copy by electronic mail.

Neville H. Boschert, Esq.
Jones Walker LLP
190 E. Capitol St, Ste 800 (39201)
POB 427
Jackson, MS 39205
nboschert@joneswalker.com

Kate Margolis, Esq.
Bradley Arant Boult Cummings
One Jackson Place
188 E. Capitol St., Suite 400
Jackson, MS 39201
kmargolis@babc.com

Kevin J. LaVie, Esq.
Phelps Dunbar LLP
Canal Place
364 Canal Street, Suite 2000
New Orleans, LA 70130
kevin.lavie@phelps.com

Reuben V. Anderson, Esq.
James W. Shelson, Esq.
Phelps Dunbar LLP
4270 I-55 North, POB 16114
Jackson, MS 39236-6114
Reuben.anderson@phelps.com
Jim.shelson@phelps.com

                                          /s/ Sharon K. Shutler
                                          SHARON K. SHUTLER