UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THIRD COAST TOWING, LLC, GREAT | ) |
| GREAT AMERICAN INSURANCE, and | ) |
| NATURE'S WAY MARINE, LLC. | ) |
| | ) |
| Defendants. | ) |

UNITED STATES' MEMORANDUM IN SUPPORT OF ITS OPPOSITION
TO NATURE'S WAY MARINE, L.L.C. AND
ENVIRONMENTAL POLLUTION GROUP, L.L.C.'S MOTION TO TRANSFER

On September 2, 2016, Nature's Way Marine L.L.C. ("Nature's Way") and Environmental Pollution Group, L.L.C., ("EPG"), (collectively "Movants"), filed a Motion to Transfer this action to the United States District Court for the Eastern District of Louisiana. [Doc. No. 39] The United States opposes the Motion to Transfer on the grounds that the first-filed rule does not apply in this case.

I.  Background

On January 22, 2016, the United States filed its environmental action against Third Coast Towing, LLC, Great American Insurance, and Nature's Way ("Environmental Action") seeking reimbursement under the Oil Pollution Act, 33 U.S.C.A. § 2701 et seq., ("OPA"), and a civil penalty under Section 311(b)(7)(A) of the Clean Water Act, 33 U.S.C.A. § 1321(b)(7)(A). The United States filed its Environmental Action in this Court, the district in which the allision between a barge and the Vicksburg Railroad Bridge occurred, causing a spill of significant

1

quantities of oil into waters of the United States. Several months earlier, on May 22, 2015, Nature's Way filed an action against its insurer, National Union Fire Insurance Co. of Pittsburgh, PA ("National Union"), and Robert Milana in the United States District Court for the Eastern District of Louisiana, Civil Action No. 2:15-cv-01743, asserting claims of bad faith, breach of insurance contract, and seeking punitive damages. On December 14, 2015, Nature's Way and its insurers filed a separate action in the Eastern District of Louisiana against Third Coast Towing's Cargo Policy Underwriters, seeking reimbursement for certain costs under its insurance policy. Civil Action No. 2:15-cv-06744. On March 4, 2016, those claims were consolidated into one action before the Eastern District of Louisiana, ("Insurance Action"), Civil Action 2:15-cv-06744-ILRL-JVM.

In the instant matter, Movants assert that because Nature's Way filed its Insurance Action prior to the United States filing its Environmental Action, the first-filed rule applies and requires that this case be consolidated with the Insurance Action in New Orleans. (Doc. No. 39 at 1). The United States submits that that the first-filed rule does not apply here, as there is no likelihood of substantial overlap between the Insurance and Environmental Actions. *See The Cadle Company v. Whataburger of Alice, Inc*., 174 F.3d 599, 603 (5th Cir. 1999).

II.  Legal Standard

The first-filed rule addresses the concern is that if related cases are pending before different courts at the same time, judicial economy, consistency and comity may be at risk. *Cadle*, 174 F.3d at 603, citing *Save Power Ltd. v. Syntek Fin. Corp*., 121 F.3d 947, 950 (5th Cir. 1997); see also *West Gulf Maritime Ass'n v. ILA Deep Sea Loca,* 24, 751 F.2d 721, 728-29 (5th Cir. 1985). If there is no substantial overlap between the two cases, then the first-filed rule does

not apply. See *Cadle*, 174 F.3d at 603; *Street v. Smith*, 456 F. Supp. 2d 761, 768 (S.D. Miss. 2006).

The "second filed" court here, the Southern District of Mississippi, is called upon to determine "the likelihood of a substantial overlap" between the two actions. *See Mann Mfg., Inc. v. Hortex, Inc.,* 439 F.2d 403, 407 (5th Cir. 1971); *Mississippi Higher Educ. Assistance Corp. v. Pennsylvania*, 2012 WL 2608808 (S.D. Miss. July 5, 2012). If this court determines that substantial overlap might exist between the cases, the Eastern District of Louisiana then will decide whether the United States' Environmental Action should be consolidated with the Insurance Action. *See Cadle*, 174 F.3d at 603. If this court finds, in its discretion, that no such likelihood of substantial overlap exists, then the question does not reach the Eastern District of Louisiana for further analysis. *See Street*, 456 F. Supp. 2d at 768.

To analyze the likelihood of substantial overlap, the court looks at whether the core issues in the two cases are the same, or if much of the proof adduced would likely be identical. *Mann*, 439 F.2d at 407. In many cases, the overlap is so extensive little analysis is needed. *See e.g.*, *Sutter Corp. v. P&P Industries, Inc.*, 125 F.3d 914, 920 (5th Cir. 1997) ("There is no doubt that substantial overlap exists" where one action is to confirm and the other is to vacate the same arbitration ruling); *White v. Peco Foods, Inc.,* 546 F. Supp. 2d 339, 342 (S.D. Miss. 2008) ("highly likely that issues and parties from the first-filed action might substantially overlap" where different employee plaintiffs brought actions against the same employer for the same violations of labor laws); *Needbasedapps, LLC v. Robbins Research Intern., Inc.,* 926 F. Supp. 2d 907, 914 (W.D. Tex. 2013) ("that these two actions substantially overlap can hardly be denied; both arise from the very same transaction and occurrences, the same fight over who owns the applications and related intellectual property").

If overlap is less than complete, the court considers "such factors as the extent of the overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute." *Your Preferred Printer, LLC v. United Wholesale, LLC*, 2012 WL 3016771 (E.D. La. July 23, 2012), citing *Int'l Fidelity Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 671, 677 (5th Cir. 2011). The first-filed rule will not apply if the overlap between the cases is not substantial. *See, e.g., Document Generation Corp. v. Allscripts*, LLC 2009 WL 2824741 E.D. Texas August 27, 2009)(patentee had asserted different patents against only some of the same defendants and transfer not appropriate); *Invitrogen Corp. v. Gen Elec. Co.* No 6:08-cv-113, 2009 WL 331889 at *4 (E.D. Tex. Feb 9, 2009) denying transfer where cases involved patents with few similarities ). The Ninth Circuit warned that the first-filed rule "should not be applied 'mechanically.'" *Kohn Law Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015).

### III. Analysis
#### A. There Is No Likelihood Of Significant Overlap Between the Environmental Action and the Insurance Action

The Movants, without support for their assertion, claim the core issues in these cases are the same, and can be articulated in a single sentence: "The central issues in all of the claims in this pending action are: (1) the factual circumstances of the January 27, 2013 allision – which affect the Clean Water Act penalties and insurance coverage for the oil spill clean-up and removal costs; and (2) the limitation of liability issue – which affects the NPFC claim and the allocation of financial responsibility (i.e., insurance coverages) between the parties and their insurers for the oil spill cleanup and removal costs." Memorandum of Points and Authorities in Support of Motion to Transfer, [Doc. No. 4] ("Memorandum") at 3–4. However, a close review

of the key claims and assertions of each case indicates that the core issues are not similar and there is no likelihood of substantial overlap between them.[1]

1. The Core Issues in the Insurance Action Pertain to Contract Interpretation and Transactions Among Insurers and Insureds.

The first claim filed by Nature's Way is a bad faith insurance claim against its insurer, National Union. Civil Action No. 2:15-cv-01743 (May 22, 2015) ("Bad Faith Compl."). According to its complaint, Nature's Way sought payment from National Union for $107,375 bill from its lightering contractor, Magnolia incurred during the oil spill cleanup. (Bad Faith Compl. at ¶ 11). National Union denied the claim, relying on a force majeure clause in the charter agreement between Nature's Way and Third Coast. *Id*. at ¶ 12. Nature's Way asserts that this denial was in bad faith because the force majeure language did not apply. *Id*. at ¶ 13. Meanwhile, Third Coast asked National Union for a letter of undertaking ("LOU") as security for its damages claim against Nature's Way. National Union agreed to cooperate but allegedly delayed so much that, in the interim, Third Coast seized the M/V ENDEAVOR in an *in rem* proceeding. As a result, Nature's Way lost the use of its charter for several days. *Id*. at ¶ 21.

The evidence adduced in Nature's Way's bad faith claim solely pertains to National Union's actions as an insurer, interpretation of the force majeure provisions of the charter agreement between Nature's Way and Third Coast, and the damages incurred as a result of National Union's handling of the claims, including the seizure of the M/V ENDEAVOR. While

---

[1] Before looking to core issues, courts often consider whether the same parties are involved in both actions. *See Save Power*, 121 F.3d at 951. While the exact identity of the parties is not required to show significant overlap, in this case there is barely any similarity in the parties. *Save Power*, 121 F.3d at 951. The only identical party in both the United States' Environmental Action and the Insurance Action is Nature's Way – all the other parties are different. Compare *Kohn*, 787 F.3d 1237, 1240 (9th Cir. 2015) (finding significant overlap of parties where plaintiff in second filed suit named all but one of the parties in the first filed suit.)

the Magnolia bill would not have existed but for the oil spill, the focus of this action is on how National Union handled the claims and the damages incurred as a result of its actions.[2]

The second insurance action is between Nature's Way and its Protection and Indemnity (P&I) and Excess Insurance Policy underwriters against Third Coast's Cargo Insurance Policy underwriters. Civil Action No. 2:15-cv-06744 (December 14, 2015) ("Underwriters' Complaint"). This insurance action seeks to allocate responsibility for costs incurred by Third Coast to salvage as much crude oil as possible after the allision. Underwriters' Complaint at ¶ 6. Nature's Way's P&I underwriters paid casualty to both Third Coast and Nature's Way. *Id*. ¶ at 8. The complaint asserts that Third Coast's Cargo underwriters are responsible for a portion of the casualty payments pursuant to the Cargo policy language which is included specifically in the complaint.

The complaint further asserts that Nature's Way is an additional insured pursuant to the charter agreement between it and Third Coast, again including specific language of the charter agreement. The crux of this claim, therefore, is whether some or all of the funds expended by Nature's Way's P&I carrier to resolve the litigation with Third Coast is recoverable from Third Coast's Cargo insurer pursuant to their policy language and the charter agreement. Here, again, the issue before the Court is contract interpretation and the resulting allocation of responsibility among Nature's Way and Third Coast and their respective insurers.

> 2. The Core Issues in the United States' Claims Pertain to the Recovery of Oil Spill Removal Costs Under OPA, Statutory Factors for Imposing a Civil Penalty, and APA Review of an Agency Decision.

---

[2] The Bad Faith complaint alleges that National Union ignored representations by Nature's Way that the allision was due to navigational error. Even so, at issue is National Union's failure to respond to Nature's Way, not whether or not the allision was the result of pilot error. *See Id*. ¶ at 12. Accordingly, evidence on "factual circumstances of the allision" are not evidently at the core of this claim. *See* Memorandum at 3.

The United States' claim does not involve insurance coverage issues. Rather, the United States' claim against Nature's Way and Third Coast includes a claim asserted on behalf of the National Pollution Funds Center ("NPFC"), is for the recovery of $792,868.98 of oil spill removal costs it paid under OPA, 33 U.S.C.A. § 2701 *et. seq.*, as well as a claim for civil penalties under Section 311(b)(7)(A) of the Clean Water Act, 33 U.S.C.A. § 1321(b)(7)(A). Additionally, in the Environmental Action, Nature's Way has asserted a counter-claim against the United States for the NPFC's denial of its claim of $2,138,382.14 for reimbursement of oil spill cleanup costs and requests that this Court "abate or off set" the United States' claim against it.

Movants argue that the NPFC's denial of Nature's Way's claim for reimbursement of oil spill cleanup costs based on its determination that Nature's Way's OPA limitation is $4,272,000 rather than $854,400, affects the financial responsibility of Nature's Way, Third Coast and their insurers. As such, Nature's Way argues that if the Environmental Action is not consolidated with the Insurance Action, there is a risk of inconsistent rulings on the recovery sought by the United States. The NPFC's determination of the applicable OPA limitation, however, has no effect on the Insurance Action pending in the Eastern District of Louisiana. As discussed above, the claims asserted in the Insurance Action concern the interpretation of insurance contract and charter agreement provisions, an insurer's bad faith claims handling, and the allocation of responsibility for costs among Third Coast's Cargo insurance provider and Nature's Way's P&I and Excess insurance companies. These insurance disputes do not depend on this Court's determination of the amount of recovery owed to the United States for the oil spill removal costs it paid under OPA or the civil penalties to be assessed against Nature's Way and Third Coast.

This court must also determine, based on the administrative record, whether the NPFC's denial of Nature's Way's claims for reimbursement of oil spill cleanup costs was arbitrary and capricious, or an abuse of discretion, under the Administrative Procedure Act, ("APA") (5 U.S.C.A. §§ 701-706). By doing so, the court must determine the amount owed to the United States. Here, again, the issues are substantially different from those in the Insurance Action, and the different standard of review ensures that there is no concern for duplication of findings between the two courts.

Additionally, in the Environmental Action, the United States has asserted a claim against Nature's Way and Third Coast for penalties under the Clean Water Act, 33 U.S.C.A. § 1321(b)(7)(A), which has no connection to the Insurance Action. Movants assert that the factual circumstances of the allision with the Vicksburg Bridge "affect the Clean Water Act penalties." However, unlike the Insurance Actions, where the allision itself is a mere backdrop for the wrangling over allocation of costs that took place following the oil spill, the penalties case does, in fact, look to facts surrounding the allision. Under the CWA, any person who is the owner, operator, or person in charge of any vessel . . . from which oil or a hazardous substance is discharged into waters of the United States shall be subject to a civil penalty. 33 U.S.C. § 1321(b)(7)(A). Section 311(b)(8) of the Clean Water Act, 33 U.S.C. § 1321(b)(8), sets forth factors to determine amount of the penalty: the seriousness of the violation, the economic benefit to the violator, degree of culpability, any other penalty for the same incident, any history of prior violations, the nature, extent and degree of success of any efforts of the violator to minimize or mitigate the effects of the discharge, the economic impact of the penalty on the violator, and any other matters as justice may require. The evidence adduced in the penalty claim will follow that

statutory guidance closely and will not touch on insurance coverage or the language of the charter agreement.

### B. Analogous 5th Circuit Case Law Supports a Finding That No Significant Overlap Exists.

In an analogous case, *Int'l. Fidelity Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 671, 677 (5th Cir. 2011), the Fifth Circuit upheld a district court's refusal to transfer. In that case, U.S. Customs assessed penalties against Sweet Little Mexico ("SLM"). International Fidelity Insurance Company ("IFIC") paid the penalties on behalf of SLM and subsequently brought two actions: (1) a claim in the Court of International Trade ("CIT") and (2) a claim against SLM, in federal district court, for indemnification for, and reimbursement of, the penalties it had paid to Customs on SLM's behalf. *Id*. at 679.

SLM sought to have IFIC's district case transferred to the CIT, arguing that IFIC's action against Customs was first to file. *Id*. There, the District Court did not transfer the case, holding that the "core issues" in the two forums were not the same. *Id*. That decision was upheld by the Fifth Circuit. In the CIT action, the issue was whether Customs properly assessed duties against SLM. *Id*. at 673. (Not unlike the Environmental Action here where the question before the court is whether the NPFC's Fund properly denied Nature's Way's claim for reimbursement). And in IFIC's District Court action, the court was asked to decide if, based on the common law of Texas, IFIC has a right to indemnification for duties paid on SLMs behalf. *Id*. at 674. (not unlike the Insurance Action). IFIC's right to indemnification was not dependent on the outcome of the CIT case. *Id*. at 678. Therefore, the court concluded, the proof adduced and core issues would not be the same, and upheld the District Court's decision to find no substantial overlap. *Id*. The court did not to apply the first-filed rule.

Movants rely unduly on an unreported decision from the Eastern District of Louisiana, *Kirby Inland Marine v. Zurich Ins. Co*., 2001 WL 1479106 (Civ. 01-2487 E.D. L.A., November 19, 2001). Movants assert that *Kirby* stands for the proposition that an insurance action and a limitation of liability action substantially overlap. As discussed above, a case-by-case analysis must be made to determine whether substantial overlap exists. *See Cadle*, 174 F.3d at 603.

In *Kirby*, like here, a tug boat pushed a barge into a bridge and released toxic substances into the environment. *Kirby*, 2001 WL 1479106 at *1. The cases to be consolidated in *Kirby*, however, overlapped in important ways. Barge owner Kirby was a party in the declaratory action case in which it sought coverage as an additional assured under the vessel owner's insurance policy and would eventually become a claimant in the vessel owner's limitation of liability proceeding. *Id*. Additionally, in *Kirby*, the extent of the vessel's owners' insurance coverage would also be at issue in the limitation of liability proceeding. *Id*. at *2.

Here, there is no Limitation of Liability Act monition in an earlier filed action; there are simply insurance coverage actions that may allow responsible parties to shift some of their liability for the sums the government seeks. The source of Nature's Way's insurance coverage for its liabilities has no impact on the United States' right to recover.

IV. <u>Conclusion</u>

The purpose of the first-filed rule is to avoid conflict and support comity among the courts. *Cadle*, 174 F.3d at 603. In this case, the roles of the two jurisdictions are separate, with the Environmental Claims establishing how much is owed, and the Insurance Claims allocating responsibility for that amount among insurers. These inquiries do not conflict or overlap. *See International Fidelity*, 665 F.3d at 677. For the foregoing reasons, the United States requests that this honorable court deny the Motion to Transfer Venue.

Respectfully submitted,

/s/ Elise S. Feldman
ELISE S. FELDMAN
Senior Counsel
United States Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
301 Howard Street, Suite 1050
San Francisco, CA 94105
Tel: (415) 744-6470
Fax: (415) 744-6476
Email: Elise.Feldman@usdoj.gov

STEPHEN FLYNN
JESSICA SULLIVAN
Aviation & Admiralty Litigation
Torts Branch, Civil Division
P.O. Box 14271
Washington, DC 20044-2471
Tel: (202) 616-4070
Fax: (202) 616-4002
Email: Stephen.Flynn@usdoj.gov

ELLEN M. MAHAN
Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice

*Attorneys for Plaintiff*
UNITED STATES OF AMERICA

Of Counsel:
LCDR Nicholas J. Tabori
National Pollution Funds Center
U.S. Coast Guard Stop 7605
2703 Martin Luther King Jr. Ave.
Washington, DC 20593-6064

LT SEAN R. GAJEWSKI
Office of Claims and Litigation
Coast Guard Headquarters
2703 Martin Luther King Jr. Ave. SE
Washington, DC 20593-7213

LT Gretal G. Kinney, UCSG
Senior Staff Attorney
Eight Coast Guard District
Hale Boggs Federal Building
500 Poydras Street
New Orleans, LA 70130