UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>VERSUS<br><br>THIRD COAST TOWING, LLC, GREAT AMERICAN INSURANCE AND NATURE'S WAY MARINE, LLC | CIVIL ACTION<br>NO. 3:16-cv-34-CWR-FKB |

**MEMORANDUM IN SUPPORT OF NATURE'S WAY MARINE, LLC AND ENVIRONMENTAL POLLUTION GROUP, LLC'S MOTION *IN LIMINE* TO EXCLUDE PORTIONS OF THE NPFC'S ADMINISTRATIVE RECORD**

Nature's Way Marine, LLC ("Nature's Way Marine") and Plaintiff Environmental Pollution Group, LLC ("EPG") move to exclude, and/or preemptively object to the inclusion in the record of these proceedings, certain portions of the National Pollution Fund Center's ("NPFC") Administrative Record relative to its Decision of March 2016 (the "Administrative Record"). This Administrative Record was created by the NPFC and relates to Nature's Way Marine and EPG's private administrative claims made directly to the NPFC pursuant to the Oil Pollution Act of 1990 ("OPA"). Plaintiff the United States of America (the "United States") has now produced and filed the Administrative Record of the NPFC in its entirety in the context of these proceedings, brought by the United States in an effort to recuperate certain sums expended following the marine allision and oil spill underlying this suit. However, as set forth in greater detail below, the NPFC's Administrative Record includes investigative and other materials from the United States Coast Guard's review of the allision. As federal statute expressly sets forth, these Coast Guard materials are inadmissible as evidence in the context of these judicial

{N3362996.2}   1

proceedings. Accordingly, this Court should exclude and/or strike from the record those portions of the NPFC's Administrative Record barred by statute.

Further, the NPFC's reliance on such materials in its administrative proceeding is expressly barred by statute, and was therefore inappropriate. The Coast Guard materials, as well as the untimely NPFC Decision of March 2016 itself, should be therefore be excluded or stricken in its entirety. The Decision is untimely, biased and unreliable, as it was premised on the evaluation of material inadmissible in administrative proceedings before the NPFC.

Moreover and/or in the alternative, much of the referenced Coast Guard materials are irrelevant to the instant proceedings and were not relied upon by the NPFC in formulating its Decision; accordingly, those records should be stricken as immaterial and unduly prejudicial.

Finally and/or in the alternative, to the extent that the Coast Guard records entered into evidence in these proceedings have been marked or annotated by the NPFC, the inclusion of such modifications runs afoul of Rule 1002 of the Federal Rules of Evidence, and *at a minimum*, those annotated portions should be stricken.

Notably, in addition to the fact that the NPFC's Decision was untimely rendered (which is in and of itself a basis for this Court to set it aside), the NPFC's (1) reliance upon inadmissible Coast Guard materials and (2) arbitrary and capricious failure to consider analogous federal natural resource protection statutes in applying undefined terms in OPA both render its 2016 Decision inappropriate in its entirety. The entire Decision should be set aside, with the matter remanded for further review in light of the Court's findings. Nature's Way Marine and EPG specifically reserve the right to make these and other arguments relative to the propriety and review of the NPFC's March 2016 Decision in future pleadings and at the trial of this matter.

## BACKGROUND & PROCEDURE

As this Court is aware, Nature's Way Marine and EPG filed a May 22, 2015 administrative claim against the NPFC stemming from the January 27, 2013 bridge allision and subsequent oil spill giving rise to these proceedings. In connection with that spill and by virtue of its designation as an OPA "Responsible Party," Nature's Way Marine and EPG, on behalf of Nature's Way Marine, expended millions of dollars in remediation, clean-up and recovery expenses. Nature's Way Marine and EPG thereafter filed their administrative claim with the NPFC seeking recovery of those sums expended in excess of the applicable OPA limitation of liability of $854,400.00 for the M/V NATURE'S WAY ENDEAVOR. This claim was subsequently denied by the NPFC in a March 2016 Decision rendered substantially late, in violation of the express terms of the NPFC's own regulations.

The instant proceedings were filed by the United States against Nature's Way Marine, LLC, Third Coast Towing, LLC, and Great American Insurance Company on January 22, 2016 seeking recovery of sums expended by the United States Government related to the spill. Nature's Way Marine subsequently filed a Cross-claim against Third Coast Towing and, together with its pollution insurer Environmental Pollution Group, LLC, filed a Counterclaim against the United States relative to its afore-described administrative NPFC claim. As this Court is aware, Nature's Way Marine and EPG now seek administrative review of the NPFC's March 2016 Decision denying recovery. In connection with this litigation, the United States has recently produced a complete copy of the NPFC's Administrative Record [Doc. 38] relative to Nature's Way Marine and EPG's claim. However, upon inspection of that Administrative Record, it became clear that the NPFC impermissibly relied upon the reports, findings, and other

documentation of the United States Coast Guard. As these materials are likewise inappropriate evidence in judicial proceedings, and are otherwise immaterial, prejudicial and inappropriately annotated, Nature's Way Marine and EPG preemptively seek their exclusion.

## LAW & ARGUMENT

### I. Standard for Judicial Review of Administrative Records

In addressing exclusions to or the erroneous admission of administrative records in judicial proceedings, Courts have employed either a motion *in limine*, *see, e.g., Kinsman v. Unumprovident Corporation*, 2004 WL 838040 (D. Conn. 2004); *Palmer v. Mutual of Omaha Insurance Company*, 2005 WL 6751228 (E.D. Okla. 2005), or an order or motion to strike, *see, e.g., Eckstein Marine Service, Inc. v. The Crescent Marine Towing, Inc.*, 1999 WL 58264 at *1 (E.D. La. 1999); *Cheema v. Astrue*, 2009 WL 4508568 (D. Kansas, 2009). Federal Rule of Civil Procedure 12(f) grants Courts the express authority to strike, either by motion or *sua sponte*, any "redundant, immaterial, impertinent, or scandalous matter." As set forth below, the objected-to evidence in the Administrative Record should be either excluded via motion *in limine* because it is expressly barred by statute, or stricken as immaterial and unduly prejudicial, and impermissibly annotated.

### II. United States Coast Guard Investigation Reports Are Not Admissible As Evidence In Administrative or Judicial Proceedings.

**46 U.S.C. § 6308(a) expressly bars the records of marine casualty investigations from evidence in both administrative and civil judicial proceedings.**

Section 6308(a) entitled "Information Barred in Legal Proceedings" provides that:

> (a) Notwithstanding any other provision of law, <u>no part of a report of a marine casualty investigation</u> conducted under Section 6301 of this Title, including findings of fact, opinions, recommendations, deliberations or conclusions, <u>shall be admissible as evidence</u> or subject to discovery in <u>any civil or administrative proceeding</u>,

other than an administrative proceeding initiated by the United States (emphasis added).

The Code of Federal Regulations, Title 46 Part 4, defines "marine casualty" as follows:

§4.02-1 Marine casualty or accident.

Marine casualty or accident means:

(a) Any casualty or accident involving any vessel other than a public vessel that –

    (1) Occurs upon the navigable waters of the United States, its territories or possessions;

. . .

(b) The term "marine casualty or accident" applies to events caused by or involving a vessel and includes, but is not limited to, the following:

. . .

    (2) Any occurrence involving a vessel that results in –

. . .

        (vi) <u>Allision</u>

. . .

        (xii) Any accident involving significant harm to the environment;

(4) Any incident described in §4.05-1(a) [which includes an allision with a bridge or significant harm to the environment – <u>including oil discharges</u>] (emphasis added).

The NPFC's Administrative Record [Doc. 38] produced and filed by the United States as includes inadmissible marine casualty investigation records from the United States Coast Guard relating to this case. Specifically, Part 4.0: <u>Incident Documentation</u> (pages AR00559 to

AR00710)[1] of the NPFC's Administrative Record, pursuant to the United States' own index, consists of "Nature's Way MISLE Record." Here, "MISLE" stands for "Marine Investigation for Safety and Law Enforcement" and references the investigation by the United States Coast Guard into the bridge allision and subsequent oil spill underlying these proceedings.

It cannot be disputed that this allision event constitutes a "marine casualty" within the express meaning of 46 C.F.R. § §4.02-1. Furthermore, the NPFC claim at issue herein was instituted by Nature's Way Marine and EPG, not the NPFC or some other federal governmental agency.[2] Accordingly, pursuant to the express mandate of 46 U.S.C. § 6308(a), the referenced United States Coast Guard investigation materials were inadmissible as evidence before the NPFC (although, as evidenced by the NPFC's Administrative Record, there were nevertheless relied upon by the NPFC), and are likewise **inadmissible in these proceedings**.

The wealth of jurisprudence applying Section 6308(a) supports a finding that such Coast Guard investigation reports are inadmissible as evidence in judicial proceedings. *See, e.g., Guest v. Carnival Corporation,* 917 F. Supp. 2d 1242, 1246 (S.D. Fla. 2012) ("courts considering this question universally agree that the Coast Guard's report is protected from discovery and is inadmissible as evidence"); *In re Complaint of Atlantic Marine Prop. Holding Co., Inc.,* 2008 WL 3828801, at *1 (S.D. Ala. 2008) ("…the entire content of the Coast Guard report is precluded from being used in any civil litigation pursuant to 46 U.S.C. §6308…whether or not

---

[1] The Administrative Record electronically filed in nine parts on September 1, 2016, is a restricted document that was provided to the parties as a redacted hard copy by the Department of Justice. We refer to the hard copy herein. Doc. 38-3 and 38-4 contain most of the AR pages to which we particularly object.

[2] This is true even if the United States did institute these judicial proceedings. The Administrative Record is clearly proffered by the United States in support of its case with respect to the NPFC's Decision denying Nature's Way Marine and EPG's administrative OPA claim, which administrative proceedings were undeniably instituted by Nature's Way Marine and EPG. The Coast Guard materials therein are therefore inadmissible in these judicial proceedings just as they were inadmissible evidence in the underlying administrative proceedings giving rise to this claim.

the portion of the report mentions findings of fact, opinions or conclusions…"); *Bruce Falconer v. Penn Maritime, Inc.*, 397 F. Supp. 2d 68, 70 (D. Maine, 2005) ("[t]he statute expressly prohibits the admission into evidence of any 'part of the report' and Coast Guard photographs taken pursuant to its investigatory authority must be 'part of the report'"); *Baker Hughes Oilfield Operations, Inc. v. Seabulk Tankers, Inc.*, 2004 WL 859199 at *1 (E.D. La. 2004) ("by the plain language of [46 U.S.C. §6308(a)], the Coast Guard report disputed here is not admissible in this case" and "certainly the Coast Guard report and any portion is inadmissible as a general rule"); *I&M Rail Link, Inc. v. Northstar Nav., Inc.*, 2001 WL 460028 at *6 (N.D. Ill. 2001) ("the court hereby orders that, as required by 46 U.S.C. §6308(a), no report or part of a report of any marine casualty investigation conducted pursuant to 46 U.S.C. §6301 shall be offered or introduced at trial"); *Conagra, Inc. v. Weber Marine, Inc.*, 1999 WL 705546 at *2 (E.D. La. 1999) ("Section 6308 clearly bars the admission of Exhibit A [Coast Guard marine casualty investigation report]…"); *Eckstein Marine Service, Inc. v. The Crescent Marine Towing, Inc.*, 1999 WL 58264 at *1 (E.D. La. 1999) ("the Court finds that the [U.S. Coast Guard investigation report or the contents thereof] should be 'stricken' in the context of these pleadings as it is inadmissible as evidence"); and *Tokio Marine and Fire Ins. Co., Ltd. v. M/V FLORA*, 1998 WL 516110 at *2 (E.D. La. 1998) ("the marine casualty investigation report is not admissible evidence in this case: the report may not be introduced into evidence by any party and no portion of the report may be considered an admission of liability by any person referred to in the report"); *Thompson v. Yellow Fin Marine Services, LLC*, 2016 WL 3997060 at *2, 4 (E.D. La. 2016) (granting motion in limine excluding United States Coast Guard investigative report).

Coast Guard factual summaries, witness interviews, and/or vessel deficiencies, such as those present in the Coast Guard's investigatory record here,[3] are specifically excluded from admissibility. Specifically, the *Guest v. Carnival Corporation* decision from the Southern District of Florida has expressly held that the protection of Section 6308 is expansive and excludes any Coast Guard findings, opinions and conclusions such as those present in memos and witness interview reports. 917 F. Supp. 2d 1242, 1245–46 (S.D. Fla. 2012). Here, the reason for this rule is clear: the Coast Guard's comments may undermine and prejudice Nature's Way Marine and EPG in that they will necessarily color and bias the Court against the Captain and crew of the M/V NATURE'S WAY ENDEAVOR. Indeed, the inflammatory report undoubtedly influenced the NPFC in the administrative forum, despite the fact that the NPFC was statutorily barred from reviewing the report as part of its administrative review of Nature's Way Marine and EPG's OPA claims. The prejudice should not be compounded here in the Court's judicial review of the NPFC's denial.

Accordingly, and considering the express language of 46 U.S.C. § 6308(a), as well as the fact that Nature's Way Marine and EPG's OPA claims were brought by Nature's Way Marine and EPG directly, the entire contents of the United States Coast Guard's investigative file, findings, reports and other documentation are inappropriate evidence for judicial proceedings, and must be stricken from the record herein.

---

[3] *E.g.*, AR00570-00573, AR00643-00646, AR00655, and AR00663-00665.

### III. Additionally and/or In the Alternative, This Court Should Strike the Coast Guard's Investigative Materials as Irrelevant, Immaterial and Unduly Prejudicial Pursuant to Federal Rule of Civil Procedure 12(f).

Additionally and/or in the alternative, the Court should strike the Coast Guard materials pursuant to Federal Rule of Civil Procedure 12(f) as irrelevant, immaterial, and prejudicial.[4] As described above, the NPFC impermissibly relied upon the inadmissible United States Coast Guard materials in evaluating the claim at issue herein. The NPFC's March 2016 Decision was necessarily influenced by the contents of those materials.

This Court has previously indicated that Nature's Way Marine and EPG's proof of bias by the NPFC in rendering its March 2016 Decision was not supported. [Doc. 37, p. 2.] However, Nature's Way Marine and EPG have now had the opportunity to review the NPFC's Administrative Record of their claim, and this Administrative Record lends credence to those contentions. The NPFC's Decision, by the Plaintiff's own admission in the Administrative Record itself, improperly considered the statutorily-barred Coast Guard investigative report materials,[5] which include, in part, inflammatory and biased documentation and information.[6] This fact renders the Decision itself biased as a matter of law since the NPFC's ultimate

---

[4] 5 U.S.C. §556(d) further echoes Rule 12(f) in providing that evidence in an administrative proceeding must not be irrelevant, immaterial or unduly repetitious. *See also Al Haramain Islamic Foundation, Inc. v. United States Department of Treasury*, 585 F. Supp. 2d 1233, 1258 (D. Ore. 2008) (using the "arbitrary and capricious" standard); *Kadi v. Geithner*, 42 F. Supp. 3d 1, 13 (D.C. D.C. 2012).

[5] In *WQIS v. United States,* 2016 WL 7410548 (D.C. Cir. 2016) at *8, discussed *infra* at p. 12-13, the Court used a USCG investigative report that was produced by claimant before the NPFC without objection, unlike Nature's Way Marine and EPG in this case, who did not introduce but rather object to the inclusion of the USCG investigation.

[6] Further, outside of the inflammatory documents, much of the Coast Guard materials consist of documents completely immaterial to the Fund's decision, such as notices, traffic documents, photographs, health and safety plans, government-approved clean-up plans, weather, press releases, other claims, EPA costs, and so forth. After diligent search, **Nature's Way Marine and EPG could find little to no reference to any of this material in the body or footnotes of the NPFC's Decision of March 2016** presently before this Court. These materials are therefore substantially immaterial to the issues set forth in the NPFC's Decision and were not used by the NPFC in formulating that Decision. Accordingly, those documents should be excluded not only because the law provides that they are inadmissible, but also because they consist of materials irrelevant and immaterial to the NPFC's Decision.

acceptance or rejection of the claim was necessarily influenced by those materials and the conclusions drawn therein. The resulting fundamental unfairness to Nature's Way Marine and EPG should not be overlooked here, and the Decision should be excluded from these proceedings.

The narrow issues addressed by the NPFC's March 2016 Decision and which are now before this Court for judicial review are the following:

A. Whether OPA's liability limits are based on the discharging vessel;

B. Whether Nature's Way Marine is an "Operator" under OPA;

C. Whether Claimants [Nature's Way Marine and EPG] mistakenly rely upon financial responsibility regulations; and

D. Whether Claimants have released their rights against Third Coast Towing, LLC.

Nature's Way Marine and EPG are prejudiced by the inclusion of the Administrative Record as introduced by the United States insofar as it contains statutorily barred, immaterial, and inflammatory records which necessarily reflect on the merits of Nature's Way Marine and EPG's administrative claims, now subject to judicial review. Those portions of the Administrative Record relative to the Coast Guard's report should therefore be excluded or stricken pursuant to Federal Rule of Civil Procedure 12(f) and/or 5 U.S.C. §556(d). In the alternative, should this Court permit the inclusion of any portion of the Coast Guard's report in evidence in this matter, the propriety of which inclusion is expressly denied, then the United States should at a minimum pare down Part 4.0 to only those portions relevant to its Decision (*see* note 9).

**IV.	Additionally and/or In the Alternative, This Court Should Strike the Coast Guard's Investigative Materials Insofar As They Contain Markings, Highlighting, or Other Annotations By The NPFC.**

Finally, several pages of the Administrative Record appear to be altered or marked by the NPFC with notations and/or bold yellow highlighting. These documents are therefore not originals and/or are not the best evidence thereof. *See, e.g.*, AR 00491-495, 00503, 00505, 00559, 00594, 00598-599, 00601, 00641-646, 00676.

Federal Rule of Evidence 1002 bars the admission as evidence of altered documents. The highlighted and annotated pages are therefore improper for the Court's review. Accordingly, should this Court permit the inclusion of any portion of the Coast Guard's report in evidence in this matter, the propriety of which inclusion is expressly denied, then the highlighted and/or annotated pages should be excluded or stricken from the Administrative Record lodged with the Court.

**V.	The NPFC's Decision of March 16, 2016 Is Untimely On Its Face.**

The NPFC's Decision relative to the allision at issue was untimely on its face. Nature's Way Marine and EPG had already elected to treat the NPFC decision as having been "deemed denied" prior to the issuance of the actual untimely written Decision on March 16, 2016. *See* [Doc. 7, page 10 (Counterclaim, Paragraphs 13–16)]. Movants therein stated in pertinent part:

> 13.	The Director of the NPFC failed to make a final disposition of the claims within six month after it was filed [May 22, 2015]. Accordingly, in accordance with 33 C.F.R. §136.115(c), the claim is <u>deemed</u> <u>denied</u> on November 23, 2015, based on the failure of the Director of the NPFC to act on it.
>
> 14.	Nature's Way and EPG elect to have their claims <u>deemed</u> <u>denied</u> <u>finally</u> under applicable laws as regulations....
>
> 15.	On March 16, 2016, long after the passage of the allowed six-month decision period, after the <u>claimants had already decided to treat their NPFC claim as denied</u>...the NPFC purported to deny counter-claimants' claim...(emphasis added).

By coincidence, Nature's Way Marine and EPG filed their responsive pleadings (and Counterclaim) to the Complaint on March 17, 2016, just a day after receiving the NPFC's untimely purported "decision," rendered some 120 days late. 33 C.F.R. §136.115(c) entitled "Oil Spill Liability Trust Fund; Claims Procedure; Designation of Source; and Advertisement," subpart B, states:

> …The failure of the Director, NPFC to make a final disposition of a claim within six months after it is filed shall, <u>at the option</u> of the claim <u>any time thereafter</u>, be deemed a final denial of the claim.

Recently, in the *WQIS v. United States* decision from the District Court for the District of Columbia, the Court opined on the admissibility of untimely NPFC decisions. 2016 WL 7410548 (D.C. Cir. 2016), at *16-17. There, an NPFC decision on reconsideration was also issued about 120 days late, and was therefore held to be impermissibly untimely pursuant to the NPFC's own regulations.

The oil spill incident underlying the *WQIS* matter presents facts very similar to the case at bar. That accident occurred when an offshore supply vessel was maneuvering through ice and currents to reach an offshore oil and gas production platform in the Gulf of Alaska. The vessel was pinned against the platform by the ice and currents, sank, and spilled oil. The Coast Guard investigated and attributed the cause of the incident to the ice and currents as well as to crew fatigue. It further found that the master "lost situational awareness" by concentrating on maneuvering the vessel through the ice instead of the vessel's approach to the platform. WQIS, who issued an oil pollution insurance policy to the vessel's owner, paid $2.7 million in cleanup costs. WQIS then sought a determination that the responsible party was entitled to limit its liability under OPA and requested reimbursement of $1.9 million (i.e. cleanup costs less the $800,000 limitation of liability).

In its "First Determination," and relying on its own definition of "gross negligence," the Fund found that the incident was caused by gross negligence and that the responsible party was therefore ineligible for limitation under OPA. WQIS submitted a request for reconsideration, supported by additional evidence, to the NPFC. One year later, the NPFC had still not responded, so WQIS sought judicial review under the Administrative Procedure Act by commencing a lawsuit against the United States in District Court. Two months after WQIS commenced the lawsuit, the NPFC finally issued a "Second Determination" in which it again denied limitation due to the master's "gross negligence."

The District Court held that the Fund's Second Determination should be stricken from the administrative record because it was untimely. Pursuant to the express provisions of OPA, the Fund had only 90 days to respond to WQIS' request for reconsideration. Therefore, the "final agency action" subject to judicial review under the APA was the Fund's *First* Determination.

Notably, the NPFC rules on the timeliness of reconsideration decisions at §136.115(d) are similar to its rule concerning original claims decisions, which rule states:

> The failure of the Director, NPFC, to make final disposition of a reconsideration within 90 days after it is received shall, at the option of the claimant any time thereafter, be deemed a final denial of the reconsideration.

The same circumstances exist here as in the *WQIS* matter on the issue of timeliness, and the Court's evaluation relative to timeliness in that case is persuasive here. The NPFC's March 2016 Decision rendered approximately 120 days late in both cases, both direct violations of the mandates of the NPFC's very own guidelines on the rendering of decisions. Here, so tardy was the NPFC's response that EPG was forced to posture itself as if no decision by the NPFC existed in the context of its responsive pleadings in this litigation. Accordingly, this Court should reach a conclusion here similar to that in *WQIS* and exclude and/or strike the NPFC's March 2016

decision from the record in these proceedings in its entirety as untimely and therefore unduly prejudicial.

## CONCLUSION

Considering the foregoing, Nature's Way Marine and EPG respectfully object to the inclusion of Part 4.0 of the Administrative Record, the Coast Guard Materials, as evidence in these proceedings. Only Parts 1.0, 2.0 and 3.0 of the Administrative Record are material to the NPFC's March 2016 Decision, which is now before this Court for judicial review. Part 4.0 consists of statutorily inadmissible Coast Guard investigative report material. Accordingly, pretermitting for purposes of this motion the question of whether the NPFC's impermissible reliance on these materials renders the NPFC's March 2016 Decision biased or potentially null, the Coast Guard's report must, in any event, be stricken and/or excluded from these judicial proceedings pursuant to 46 U.S.C. § 6308(a). The continued reliance of the NPFC on these materials in its administrative, and now judicial, proceedings renders Nature's Way Marine and EPG unduly prejudiced, as it necessarily biases the trier of fact toward impermissible conclusions as to the merits of Nature's Way Marine and EPG's administrative OPA claims. Additionally, and for the same reasons, the Coast Guard's investigation materials must be excluded as evidence in other non-administrative record aspects of the case, *i.e.,* insurance claims, and governmental claims for penalties and OPA removal costs.

**WHEREFORE**, Nature's Way Marine, LLC and Environmental Pollution Group, LLC pray that this Motion *in Limine* be found good and sufficient, and that after due proceedings are had, that this Honorable Court strike and/or exclude those portions of the Administrative Record relating to the United States Coast Guard's report and investigation into the allision giving rise to these proceedings.

THIS 3rd day of February 2017.

        Respectfully submitted:

        NATURE'S WAY MARINE, LLC and
        ENVIRONMENTAL POLLUTION GROUP, LLC

        By Their Attorneys,
        Jones Walker, LLP


        */s/ Neville H. Boschert*
        NEVILLE H. BOSCHERT (MSB #3697)
        Jones Walker, LLP
        190 E. Capitol St., Ste. 800 (39201)
        PO Box 427
        Jackson, MS 39205-0427
        Telephone: 601-949-4900
        Facsimile: 601-949-4804
        E-Mail: nboschert@joneswalker.com


        JEFFERSON R. TILLERY (*pro hac vice*)
        STANLEY A. MILLAN (*pro hac vice*)
        MARC C. HEBERT (*pro hac vice*)
        Jones Walker LLP
        201 St. Charles Avenue
        New Orleans, Louisiana 70170
        Telephone: (504)582-8000
        Facsimile: (504) 582-8583
        E-Mail: jtillery@joneswalker.com
                smillan@joneswalker.com
                mhebert@joneswalker.com


## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day served a true and correct copy of the foregoing pleading upon counsel of record by filing in this Court's CM/ECF system.

This 3rd day of February 2017.

        */s/ Neville H. Boschert*
        Neville H. Boschert