IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA                                               PLAINTIFF

V.                                                   CAUSE NO. 3:16-CV-34-CWR-FKB

THIRD COAST TOWING, LLC, ET AL.                                      DEFENDANTS

**ORDER**

Before the Court are the following motions: (1) a motion in limine filed by Nature's Way Marine, LLC and Environmental Pollution Group, LLC; (2) a motion for summary judgment filed by the same parties; and (3) a motion for partial summary judgment filed by the United States. The matters are fully briefed and ready for adjudication.

**I.      Factual and Procedural History**

On January 27, 2013, a tug operated by Nature's Way Marine was pushing two barges of sweet crude oil down the Mississippi River. As the tug maneuvered near Vicksburg, Mississippi, one of the barges struck a bridge and discharged more than 7,100 gallons of oil. Nature's Way spent $2.99 million on the ensuing cleanup, while various governmental entities spent at least $792,868.98 on the same.

In September 2013, barge owner Third Coast Towing sued Nature's Way for breach of maritime contract and maritime tort. The case settled in late 2014.

In January 2016, the United States filed the present action. It claimed that Nature's Way, Third Coast, and Great American Insurance Company were liable under the Clean Water Act and the Oil Pollution Act of 1990 ("OPA") for oil spill removal costs and civil penalties.

Nature's Way and insurer Environmental Pollution Group (collectively, "Nature's Way") counterclaimed against the United States under the Administrative Procedure Act ("APA"). They

asserted that the federal government—via the U.S. Coast Guard's National Pollution Funds Center—should have reimbursed most of Nature's Way cleanup expenses using money from the federal government's oil spill trust fund.

The United States now seeks confirmation that Nature's Way is not entitled to any reimbursement from the oil spill trust fund.[1] Nature's Way, meanwhile, wants to set aside the Coast Guard's determination and be awarded reimbursement of all but $854,000 of its cleanup costs. Nature's Way has also moved to strike parts of the administrative record.

**II.     Legal Standard**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Under the ordinary summary judgment standard, a party seeking to avoid judgment must identify admissible evidence in the record showing a fact dispute. *Id.* at 56(c)(1). "Once a summary judgment motion is made and properly supported, the nonmovant must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. Neither 'conclusory allegations' nor 'unsubstantiated assertions' will satisfy the nonmovant's burden." *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (quotation marks and citations omitted). The Court views the evidence and draws reasonable inferences in the light most favorable to the nonmovant. *Maddox v. Townsend and Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011). But the Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Wash. Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as revised on denial of reh'g*, 70 F.3d 26 (5th Cir. 1995).

---

[1] The federal government has not yet sought summary judgment on its other claims.

The APA standard of review is somewhat different:

> The Administrative Procedure Act ("APA") allows a federal court to overturn an agency's ruling only if it is arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence on the record taken as a whole. The court starts from a presumption that the agency's decision is valid, and the plaintiff has the burden to overcome that presumption by showing that the decision was erroneous. The agency's factual findings are reviewed to determine only whether they are supported by substantial evidence. The agency's legal conclusions are reviewed *de novo,* except for questions of statutory interpretation, where the court owes substantial deference to an agency's construction of a statute that it administers. Review is highly deferential to the administrative agency whose final decision is being reviewed.

*Buffalo Marine Servs. Inc. v. United States*, 663 F.3d 750, 753-54 (5th Cir. 2011) (quotation marks and footnotes omitted).

### III.   Discussion

In *Buffalo Marine*, the Fifth Circuit succinctly summarized the substantive law and administrative procedure at the heart of today's motions.

> The Oil Pollution Act of 1990 ("OPA") creates a strict-liability scheme for the costs of cleaning up oil spills: "each responsible party for a vessel . . . from which oil is discharged . . . is liable for the removal costs and damages . . . that result from such incident." The "responsible party" for a vessel is "any person owning, operating, or demise chartering the vessel." The liability of the responsible party is capped at a dollar limit that is set by statute; the limit is based on the gross tonnage of the responsible party's vessel. If the cleanup costs exceed the statutory limit, the responsible party can seek to have those excess costs reimbursed by the Oil Spill Liability Trust Fund.

*Id.* at 752 (footnotes omitted).

#### A.   Did Nature's Way "Operate" the Barge?

The first question is whether the Coast Guard correctly determined that Nature's Way was "operating" the barge that discharged the oil. The answer matters a great deal. If Nature's Way was operating *only* the tug, it has the tug's (lower) limitation of liability, and becomes entitled to a substantial payment from the oil spill trust fund. If, however, Nature's Way was

3

operating the tug *and* the barge that discharged the oil, it has the barge's (higher) limitation of liability, and will receive no payment from the oil spill trust fund.

The OPA was of little help in answering this question. It defines "owner or operator" as "any person owning, operating, or chartering by demise, the vessel." 33 U.S.C. § 2701(26). The definition is circular, "which leaves us to do the best we can to give the term its 'ordinary or natural meaning.'" *United States v. Bestfoods*, 524 U.S. 51, 66 (1998) (citation omitted). And that is exactly what the Coast Guard did here.

"In a mechanical sense, to 'operate' ordinarily means 'to control the functioning of; run: *operate a sewing machine*.'" *Id.* (citation and brackets omitted). In accordance with this ordinary meaning, the Coast Guard determined that Nature's Way was operating both the tug and the barge which discharged the oil. It reasoned as follows:

> By towing it, Nature's Way was operating the [barge] because it had no other means of propulsion to safely navigate up or down the Mississippi River. The speed, direction, and minute by minute navigational decisions governing the physical movement of the [barge] were controlled by Mr. Guidry, the trip pilot hired by Nature's Way, to move the [barge] down river. The Tug and barges acted as a "single unit" . . . .
>
> [Nature's Way] argued that Third Coast had operational control over the [barge] because Third Coast was responsible for instructing when the barge would be leaded, unloaded, and moved. However, this incident was proximately caused by the navigational errors committed by Nature's Way. There is no evidence suggesting that any of Third Coast's instructions had any causative effect on this oil spill. . . . Nature's Way satisfies operator liability under the OPA because it had exclusive and absolute control over the barge when it struck the bridge pier and discharged oil.

Docket No. 55-1, at 8-9.

Nature's Way cries foul. It argues that under "analogous federal environmental statutes," "operator" means the person or company with managerial and financial control over the barge. Its definition would shift responsibility onto barge owner Third Coast Towing.

The Court finds no error in the Coast Guard's conclusion. Common sense tells us that any definition of vessel "operator" must include the person steering the vessel through the water. In this case that was Nature's Way, since Nature's Way's tug pushed the Third Coast barge into the bridge.

Nature's Way presses that CERCLA defines operator more broadly, to include management activities. But that is not a persuasive reason to disregard the ordinary meaning of the word "operating" here. And on the merits, it makes sense that Congress would expect a party to exercise control over a superfund site differently than it might control a vessel going down a river. *See Bestfoods*, 524 U.S. at 71 ("In our enquiry into the meaning Congress presumably had in mind when it used the verb 'to operate,' we recognized that the statute [CERCLA] obviously meant something more than mere mechanical activation of pumps and valves, and must be read to contemplate 'operation' as including the exercise of direction over the facility's activities.").

Nature's Way makes other, similar arguments about the definition of "operator." None have merit. They will not be addressed further, particularly since none of them overcomes the presumption we must give the agency's decision under the APA or shows that the determination is arbitrary or capricious.

For these reasons, the Coast Guard's determination is affirmed.

## B.  Did Nature's Way Waive Reimbursement?

The next issue is whether Nature's Way's 2014 settlement with Third Coast bars any reimbursement from the oil spill trust fund. The government says a subrogation-related defect in the settlement is independently sufficient to uphold the Coast Guard's determination. *See* 33 U.S.C. § 2712(f). Having ruled in the government's favor on the "operator" issue, however, the Court need not take up the alternative basis for affirmance.

### C. Should Portions of the Administrative Record Be Stricken?

Finally, Nature's Way contends that portions of the administrative record should be stricken. Its strongest argument is that the Coast Guard was not entitled to adjudicate its reimbursement claim after the claim had been pending for six months.

Nature's Way is correct that the Coast Guard's determination was late under 33 C.F.R. § 136.115(c), but its supporting authorities do not support striking the document from the record. *See Water Quality Ins. Syndicate v. United States*, 225 F. Supp. 3d 41, 66 (D.D.C. 2016) (accepting untimely first agency determination, while striking untimely second agency decision). And it makes little sense to strike the determination and remand, since the Coast Guard has already "fulfilled its statutory duty to provide a brief statement of the grounds for denial under 5 U.S.C. § 555(e)." *SecurityPoint Holdings, Inc. v. Transportation Sec. Admin.*, 769 F.3d 1184, 1188 (D.C. Cir. 2014) (quotation marks and citation omitted).

Nature's Way also endeavors mightily to strike portions of the administrative record it claims are factually biased or statutorily barred. Assuming the validity of those arguments for present purposes, Nature's Way has failed to show how any of the disputed portions are material to the outcome of these cross-motions for summary judgment. The salient fact right now is that Nature's Way's tug pushed the discharging barge into the bridge, and that fact is undisputed.

None of Nature's Way's remaining arguments hold water. Its motion in limine is denied.

### IV. Conclusion

The government's motion is granted. Nature's Way's motions are denied.

**SO ORDERED**, this the 12th day of September, 2017.

s/ Carlton W. Reeves  
UNITED STATES DISTRICT JUDGE